STATE, DEFENDANT IN ERROR, v. CHARLES MACK,
PLAINTIFF IN ERROR.

Submitted March 23, 1914—Decided June 15, 1914.

1. Upon a trial of defendant for murder of his wife, a woman who
   had taken care of defendant's apartments was allowed to testify
   that she did not see a hatchet there; the apparent object was to
   show that the defendant did not use a weapon that happened to
   be there but one he had provided for the purpose. *Held*, that the
   evidence was admissible.
2. Where evidence was admitted of a written confession of murder,
   and the evidence was conflicting as to whether the confession
   was induced by hope or fear, and the written confession was
   more favorable to the prisoner although less credible than his
   oral statement made a few hours before—*Held*, that the ruling
   of the trial judge would not be reversed.
3. It is not error upon a trial for murder to refuse to charge that
   to constitute murder in the first degree, premeditation, willful-
   ness and deliberation must succeed each other in that order. All
   three must be present, and while they cannot be synchronous,
   the order in which they take place is not the controlling feature.

On error to Essex Oyer and Terminer.

For the state, *Louis Hood* and *Wilbur A. Mott.*

For the plaintiff in error, *Joseph Coult, Jr.,* and *George A.
Douglass.*

The opinion of the court was delivered by

SWAYZE, J. The plaintiff in error was convicted of the
murder of his wife. He relies for a reversal upon alleged

errors in the admission of evidence and in the charge of the
court. The first error alleged in the admission of evidence is
that a woman who had taken care of the rooms some time
during the two or three months that the plaintiff in error
and his wife had occupied them, was allowed to testify that
she did not see a hatchet there. The importance of the testi-
mony seems to have been that it tended in some degree to
show that Mack did not use a weapon that happened to be
there but one he had provided for the purpose. The evi-
dence in itself did not suffice for that purpose but we do not
doubt that it was admissible. If numerous witnesses who
had had equal opportunities of observing the contents of the
rooms but at different times could have been called and
testified to the same effect, a strong case might have been
made against any contention that the prisoner merely picked
up in the heat of the moment a hatchet meant for another
purpose; the strength of the case would have depended upon
the number of observations made and the opportunities of
each observer. The testimony of any one witness might be
of slight importance; the joint effect might be crushing.
In such a case we do not doubt that each observation is
admissible; its weight is for the jury.

The admission of the written confession of the prisoner
is objected to upon the ground that it was not voluntary.
The evidence was conflicting; if the police officer was be-
lieved there was no hope or fear to induce the confession;
if the prisoner was believed, hope was held out. We think
the trial judge was right in crediting the statement of the
officer. The written statement was more favorable to the
prisoner although less credible than the oral statement he
had made a few hours before when he had of his own accord
given himself up to the police, and no question is made of the
voluntary character of that oral statement.

The plaintiff in error complains that the judge refused
to charge that to constitute murder in the first degree pre-
meditation, willfulness and deliberation must succeed each
other in that order. It is true that in *State* v. *Clayton,* 83
*N. J. L.* 673, we stated them in that order, but the point of

the decision was not the order in which the mental acts took place but the necessity that all three should be present and the impossibility that they should be synchronous. That the order is not the controlling feature appears from our opinion in *State* v. *De Liso,* 75 *Id.* 808 (at *p.* 820), where the same learned judge places premeditation and deliberation as normally preceding the willfulness, *i. e.,* the intent to kill. We do not understand that either in those cases or in *State* v. *Mangano,* 77 *Id.* 544, 547, where we adopted the order stated in the De Liso case, the court meant to make the correctness of a charge to the jury depend upon the correctness of the psychological analysis which this court has itself made in two distinct ways; our object was rather to emphasize the need of each of the three mental processes required by the statute to constitute murder in the first degree. In the present case the learned trial judge told the jury that there are three mental states or acts and one must succeed another in point of time, and that an intent to kill, carried out, does not constitute murder in the first degree unless coupled with deliberation and premeditation, which require time for each mental act to be performed. He said, following the De Liso case and the Mangano case, that normally premeditation comes first, then follows deliberation after which the killing being determined upon becomes willful, deliberate and premeditated. The use of the words "determined upon" is equivalent to "intended." Thus he called attention to all the necessary elements and we find no error.

As to the effect of intoxication the charge was quite as favorable as the defendant had any right to ask. The judge charged that if the defendant was so intoxicated or in such a condition of mind because he was getting over a debauch that his faculties were prostrated and rendered him incapable of forming a specific intent to kill with this willful, deliberate and premeditated character, then although it is no defence or justification, his offence would be murder in the second degree. This follows the rule in *Wilson* v. *State,* 60 *N. J. L.* 171.

We see no cause for reversal in the fact that Newhall was permitted to testify as to the condition of the rooms in which decedent's body lay, that it was in good order, and that she lay there apparently asleep.

As we find no error or valid cause for reversal the judgment must be affirmed.

KALISCH, J. (dissenting). I am unable to concur in the prevailing opinion of the court for the reason that the written confession was admitted in evidence by the trial judge, though it appeared upon the preliminary examination that it was not voluntary.

The testimony relied on by the state tending to establish the voluntary character of the confession comes from two police officers, Smith and Caffrey. Smith was a patrolman and Caffrey a police-lieutenant. Smith testified that one Walter Godfrey, a dectective employed in the office of the prosecutor of the pleas, was present, when he, Smith, brought the prisoner from his cell into a room of the prison and after he, Smith, had warned the prisoner that anything he might say would be used against him, wrote down what the prisoner said in answer to questions put to him. On cross-examination, Smith was asked: "Did you ever make any offer of any sort to him or hold out any inducement to him?" to which the witness evasively replied, "I didn't have anything to offer him." It is to be observed that the witness does not say that he did not hold out any inducement to the prisoner to make the confession. The officer further testified that he did not remember all that was said upon that occasion. Caffrey, the police-lieutenant, was not present when the written confession was made. It was brought to him by Officer Smith after the confession had been signed by the prisoner and all that Caffrey did was to ask the prisoner whether he signed it. Walter Godfrey, the prosecutor's detective, who was present when the confession was made, was not a witness, being too ill to appear at the trial.

The prisoner was then called to give his version of what occurred at the time when he made the confession. He testi-

fied that Officer Smith asked him to make a statement. "He told me to make a statement; it will be better for me if I make a statement and I told him I could not write; he says, 'I will write it for you.'" Officer Smith was present, heard what the defendant said as to what he, Smith, had told him, that it would be better for him, the prisoner, to make a statement, and the state did not challenge the truth of it. Thus, when the preliminary examination was concluded, the undisputed testimony before the trial judge was that an inducement to make the statement was held out to the prisoner.

The duty devolved upon the court, before admitting the confession, to decide whether it was a voluntary one or not.

In disposing of the matter, the trial judge said: "Voluntary means by one's free will, without fear, threats or promises. I do not think there is a wide divergence here of what occurred. I will admit the statement."

The uncontradicted evidence as it stood before the trial judge was that an inducement was held out to the prisoner, by Officer Smith, to make a confession, by saying to the prisoner that it would be better for him to do so.

Conceding that the declaration of the trial judge was equivalent to a ruling that the confession was voluntary, I am unable to glean from it a finding that he rejected the defendant's testimony on that point as not worthy of belief, but rather that he accepted the testimony as it then stood before him and found that it did not establish that the confession was involuntary. In this respect the court erred. The burden was on the state to prove that the confession was voluntary and not upon the prisoner to prove it to have been involuntary.

The defendant's story how the confession was obtained was not inconsistent with that told by the police officer.

There was clearly no testimony to support the finding of the court that the confession was voluntary.

There was uncontradicted testimony that the confession was involuntary. The law on this subject in this state is well settled. In *Roesel* v. *State,* 62 *N. J. L.,* the late Chief Justice Depue, speaking for this court (on *p.* 236) said:

"The burden of the proof is on the state to show that the confession was voluntary.   The preliminary examination, which is for the court, comprises a mixed question of law and fact."

And on page 239 the learned judge, still speaking on this topic, says: "But in whatever way the finding of the trial court of the question of fact comes up for review, its finding will not be set aside unless the evidence on its face does not support the conclusion on which the trial court based its judgment."

In the case under consideration, it is apparent, on the face of the evidence, that it does not support the ruling of the trial judge.

For the error pointed out, I vote to reverse the judgment.

I am requested to state that Justices Garrison and Minturn concur in the views herein expressed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, TRENCHARD, BERGEN, BOGERT, VREDENBURGH, WHITE, HEPPENHEIMER, JJ.    9.

*For reversal*—GARRISON, MINTURN, KALISCH, JJ.    3.