STATE OF NEW JERSEY, PLAINTIFF-APPELLANT AND CROSS-
RESPONDENT, v. MICHELE LLOYD CAMERON,
DEFENDANT-RESPONDENT AND CROSS-APPELLANT.

Argued September 10, 1985—Decided September 25, 1986.

44

*Linda K. Calloway,* Deputy Attorney General, argued the cause for appellant and cross-respondent (*Irwin I. Kimmelman,* former Attorney General of New Jersey, attorney).

*Susan T. Sinins,* Assistant Deputy Public Defender, argued the cause for respondent and cross-appellant (*Thomas S. Smith, Jr.,* Acting Public Defender, attorney; *Susan T. Sinins* and *Susan Green,* Assistant Public Defender, on the briefs).

The opinion of the Court was delivered by

CLIFFORD, J.

This appeal presents a narrow, but important, issue concerning the role that a defendant's voluntary intoxication plays in a criminal prosecution. The specific question is whether the evidence was sufficient to require the trial court to charge the jury on defendant's intoxication, as defendant requested. The

Appellate Division reversed defendant's convictions, holding that it was error not to have given an intoxication charge. We granted the State's petition for certification, 99 *N.J.* 200 (1984), and defendant's cross-petition, 101 *N.J.* 243 (1985), and now reverse.

I

Defendant, Michele Cameron, age 22 at the time of trial, was indicted for second degree aggravated assault, in violation of *N.J.S.A.* 2C:12–1(b)(1); possession of a weapon, a broken bottle, with a purpose to use it unlawfully, contrary to *N.J.S.A.* 2C:39–4(d); and fourth degree resisting arrest, a violation of *N.J.S.A.* 2C:29–2. A jury convicted defendant of all charges. After merging the possession count into the assault charge, the trial court imposed sentences aggregating seven years in the custody of the Commissioner of the Department of Corrections, with a three year period of parole ineligibility and certain monetary penalties.

The charges arose out of an incident of June 6, 1981, on a vacant lot in Trenton. The unreported opinion of the Appellate Division depicts the following tableau of significant events:

> The victim, Joseph McKinney, was playing cards with four other men. Defendant approached and disrupted the game with her conduct. The participants moved their card table to a new location within the lot. Defendant followed them, however, and overturned the table. The table was righted and the game resumed. Shortly thereafter, defendant attacked McKinney with a broken bottle. As a result of that attack he sustained an injury to his hand, which necessitated 36 stitches and caused permanent injury.
>
> Defendant reacted with violence to the arrival of the police. She threw a bottle at their vehicle, shouted obscenities, and tried to fight them off. She had to be restrained and handcuffed in the police wagon.

The heart of the Appellate Division's reversal of defendant's conviction is found in its determination that voluntary intoxication is a defense when it negates an essential element of the offense—here, purposeful conduct. We agree with that proposition. Likewise are we in accord with the determinations of the court below that all three of the charges of which this

defendant was convicted—aggravated assault, the possession offense, and resisting arrest—have purposeful conduct as an element of the offense; and that a person acts purposely "with respect to the nature of his conduct or a result thereof if it is his conscious object to engage in conduct of that nature or to cause such a result" (quoting *N.J.S.A.* 2C:2–2(b)(1) ). We part company with the Appellate Division, however, in its conclusion that the circumstances disclosed by the evidence in this case required that the issue of defendant's intoxication be submitted to the jury.

The court below noted that every witness who testified gave some appraisal of defendant's condition. On the basis of that evidence the Appellate Division concluded that

> defendant's conduct was both bizarre and violent. She had been drinking and could not be reasoned with. The victim thought she was intoxicated and two police officers thought she was under the influence of something. Not one witness who testified thought that her conduct was normal. Therefore, it was for the jury to determine if she was intoxicated, and if so, whether the element of purposefulness was negated thereby.

The quoted passage reflects a misapprehension of the level of proof required to demonstrate intoxication for purposes of demonstrating an inability to engage in purposeful conduct.

## II

Under the common law intoxication was not a defense to a criminal charge. II *Final Report of the New Jersey Criminal Law Revision Commission* 67 (1971) *(Code Commentary)*; Model Penal Code and Commentaries § 2.08 comment at 350–51 (1985) (hereinafter *MPC Commentaries*); C. Torcia, *Wharton's Criminal Law* § 108, at 49 (1979); Annotation, *Effect of Voluntary Drug Intoxication Upon Criminal Responsibility*, 73 *A.L.R.*3d 98, 121 (1976) (survey of cases); Annotation, *Modern Status of the Rules as to Voluntary Intoxication as Defense to Criminal Charge*, 8 *A.L.R.*3d 1235, 1240 (1966) (same). Rather than being denominated a defense, intoxication was viewed as a "condition of fact," *Warner v. State*, 56 *N.J.L.* 686, 689 (E. & A. 1894), or, in a homicide case, as "a mere circum-

stance to be considered in determining whether premeditation was present or absent." *Wilson v. State,* 60 *N.J.L.* 171, 184 (E. & A. 1897).

Notwithstanding the general proposition that voluntary intoxication is no defense, the early cases nevertheless held that in some circumstances intoxication could be resorted to for defensive purposes—specifically, to show the absence of a specific intent.

> The exceptional immunity extended to the drunkard is limited to those instances where the crime involves a specific, actual intent. When the degree of intoxication is such as to render the person incapable of entertaining such intent, it is an effective defence. If it falls short of this it is worthless. [*Warner v. State, supra,* 56 *N.J.L.* at 690.]

The principle that developed from the foregoing approach— that intoxication formed the basis for a defense to a "specific intent" crime but not to one involving only "general" intent— persisted for about three-quarters of a century, or until this Court's decision in *State v. Maik,* 60 *N.J.* 203 (1972). See, *e.g., State v. Mack,* 86 *N.J.L.* 233, 235 (E. & A. 1914) ("if defendant was so intoxicated or in such a condition of mind because he was getting over a debauch that his faculties were prostrated and rendered him incapable of forming a specific intent to kill with * * * willful, deliberate and premeditated character, then although it is no defence or justification, his offence would be murder in the second degree"); *State v. Marriner,* 93 *N.J.L.* 273 (Sup.Ct.1919), aff'd o.b., 95 *N.J.L.* 265 (E. & A. 1920) (proof that defendant had been intoxicated for five to six weeks preceding assault on his wife and expert testimony that that condition would cause "unsoundness of mind" does not excuse consequences of crime, but justifies jury charge directed to question of whether defendant acted with requisite mental state); *State v. Treficanto,* 106 *N.J.L.* 344, 352–53 (E. & A. 1929) (evidence of defendant's deliberate search for murder weapon sufficient to support jury's conclusion that defendant's faculties were not "so far prostrated by intoxication as to render him incapable of forming an intent to kill"); *State v. Roscus,* 16 *N.J.* 415, 426 (1954) (no error in charge to jury that

"intoxication is an affirmative defense," which defendant must establish by fair preponderance of evidence; intoxication so great as to prostrate defendant's faculties and render him incapable of forming specific intent to kill would make defendant not guilty of first degree murder).

Eventually the problems inherent in the application of the specific-general intent dichotomy surfaced. In *State v. Maik, supra,* 60 *N.J.* 203 this Court dwelt on the elusiveness of the distinction between "specific" and "general" intent crimes, particularly as that distinction determined what role voluntary intoxication played in a criminal prosecution. *Id.,* at 214–15. Chief Justice Weintraub's opinion for the Court restated the original proposition that "a defendant will not be relieved of criminal responsibility because he was under the influence of intoxicants or drugs voluntarily taken," *id.* at 214, and then set forth four exceptions to that rule: (1) the ingestion of drugs for medication, producing unexpected or bizarre results; (2) impairment of mental faculties negating only premeditation or deliberation, to preclude elevation to first degree murder; (3) reduction of felony homicide to second degree murder when the felonious intent is negated; and (4) when insanity results. *Id.* at 214–16.

*Maik,* a murder prosecution, was not given a uniform reading. As later pointed out in *State v. Stasio,* 78 *N.J.* 467 (1979), the Appellate Division in *State v. Del Vecchio,* 142 *N.J.Super.* 359 certif. den., 71 *N.J.* 501 (1976), limited *Maik*'s sweep to the proposition that voluntary intoxication is relevant only to the determination of whether a murder may be raised to first degree, whereas Judge Allcorn, dissenting in *State v. Atkins,* 151 *N.J.Super.* 555, 573 (App.Div.1977), rev'd, 78 *N.J.* 454 (1979), read *Maik* to rule out voluntary intoxication as a defense to any criminal prosecution, irrespective of whether a specific or general intent was an element of the offense. *State v. Stasio, supra,* 78 *N.J.* at 474. It thus fell to the Court in *Stasio* to resolve the difference in interpretations that had been

accorded *Maik,* an undertaking that we recognize met with but limited success.

A majority of the Court in *Stasio* found the difference between general and specific intent to be "not readily ascertainable," 78 *N.J.* at 475, and concluded that honoring the distinction would give rise to "incongruous results by irrationally allowing intoxication to excuse some crimes but not others." *Id.* at 476. On the one hand, therefore, the Court brought some stability to the area, with its holding that absent one or more of the exceptions stated in *Maik,* the principle that voluntary intoxication will not excuse criminal conduct was applicable to all crimes. *Id.* at 474. But on the other hand, because of critically important legislation that was looming in the background at the time of the *Stasio* decision, the opinion may have posed more questions than it answered.

Specifically, the Court's result in *Stasio* was heavily influenced by its prognostication—mistaken, as it later developed—on what action the legislature might take in respect of its treatment of intoxication. Before *Stasio* was decided, the legislature enacted the New Jersey Code of Criminal Justice, *N.J.S.A.* 2C:1-1 to 98-4 (Code). The Code did not become effective, however, until September 1, 1979, almost a year after *Stasio* was argued and some nine months after it was decided. The Court correctly recited the pertinent Code provisions, 78 *N.J.* at 481-82, suggested some possible incongruities, *id.* at 482, and, in reliance on the Deputy Attorney General's implication that the legislature would be importuned to "modify the provisions dealing with intoxication" and that therefore the legislature might act to change the Code, determined to adhere to what it concluded was the *Maik* principle, namely, that absent one of the four exceptions, intoxication will not constitute a defense to any crime. *Id.* at 481.

Justice Handler's concurrence in *Stasio,* 78 *N.J.* at 485, took a different approach. Although the concurrence agreed with the majority and with *Maik* that the "attempted differentiation

between so-called specific intent and general intent crimes * * is an unhelpful, misleading and often confusing distinction," *ibid*, and that the "availability of voluntary intoxication as a defense in terms of that distinction * * * has led to anomalous results," *id.* at 486, it did not accept the proposition that "if the separation between so-called specific and general intent crimes is rejected, voluntary intoxication as a defense must also be rejected." *Id.* at 487. According to the concurrence,

> [t]he criminal laws need not be impotent or ineffective when dealing with an intoxicated criminal. The question should always be whether under particular circumstances a defendant ought to be considered responsible for his conduct. [*Ibid.*]

The concurring opinion in *Stasio* took the position that when dealing with the issue of intoxication, the focus at trial should be on the mental state required for the commission of the particular crime charged. *Id.* at 485. In particular, a defendant ought not be considered responsible when the effect of his intoxication

> reached such a level, operating upon the defendant's mind, * * * as to deprive him of his will to act. * * * I would accordingly require, in order to generate a reasonable doubt as to a defendant's responsibility for his acts, that it be shown he was so intoxicated that he could not think, or that his mind did not function with consciousness or volition. [*Id.* at 487.]

Justice Pashman's concurrence and dissent likewise would have hinged the success of an intoxication defense on "a showing of such a great prostration of the faculties that the requisite mental state was totally lacking." 78 *N.J.* at 495.

We have drawn at such length on the minority opinions in *Stasio* because, as will become apparent, they are much closer to the Code's view of intoxication, and thus to the law governing this appeal, than is the majority opinion in *Stasio*.

### III

Which brings us to the Code.

As indicated, after *Stasio* had been decided, the Code became effective, on September 1, 1979. It in effect displaced the Court's opinion in *Stasio* and in large measure confirmed the

approach of the concurring opinions in *Stasio* and its companion case of *State v. Atkins, supra,* 78 *N.J.* 454. See *Stasio, supra,* 78 *N.J.* at 485 (Handler, J., concurring), and *id.* at 490 (Pashman, J., concurring and dissenting); *Atkins,* 78 *N.J.* at 463 (Handler, J., concurring), and *id.* at 465 (Pashman, J., dissenting).

As originally enacted (a 1983 amendment of section d. is of no relevance here) *N.J.S.A.* 2C:2–8 provided:

a. Except as provided in subsection d. of this section, intoxication of the actor is not a defense unless it negatives an element of the offense.

b. When recklessness establishes an element of the offense, if the actor, due to self-induced intoxication, is unaware of a risk of which he would have been aware had he been sober, such unawareness is immaterial.

c. Intoxication does not, in itself, constitute mental disease within the meaning of chapter 4.

d. Intoxication which (1) is not self-induced or (2) is pathological is an affirmative defense if by reason of such intoxication the actor at the time of his conduct lacks substantial and adequate capacity either to appreciate its wrongfulness or to conform his conduct to the requirement of law.

e. Definitions. In this section unless a different meaning plainly is required:

(1) "Intoxication" means a disturbance of mental or physical capacities resulting from the introduction of substances into the body;

(2) "self-induced intoxication" means intoxication caused by substances which the actor knowingly introduces into his body, the tendency of which to cause intoxication he knows or ought to know, unless he introduces them pursuant to medical advice or under such circumstances as would afford a defense to a charge of crime;

(3) "Pathological intoxication" means intoxication grossly excessive in degree, given the amount of the intoxicant, to which the actor does not know he is susceptible.

As is readily apparent, self-induced intoxication is not a defense unless it negatives an element of the offense. *Code Commentary* at 67–68. Under the common-law intoxication defense, as construed by the Commission, intoxication could either exculpate or mitigate guilt "if the defendant's intoxication, in fact, prevents his having formed a mental state which is an element of the offense and if the law will recognize the proof of the lack of that mental state." *Id.* at 68. Thus, the Commission recognized that under pre-Code law, intoxication

was admissible as a defense to a "specific" intent, but not a "general" intent, crime. *Ibid.*

██ The original proposed Code rejected the specific/general intent distinction, choosing to rely instead on the reference to the four states of culpability for offenses under the Code: negligent, reckless, knowing, and purposeful conduct, *N.J.S.A.* 2C:2-2(b). Although the Code employs terminology that differs from that used to articulate the common-law principles referable to intoxication, the Commission concluded that the ultimately-enacted statutory intoxication defense would achieve the same result as that reached under the common law. In essence, "[t]hat which the cases now describe as a 'specific intent' can be equated, for this purpose, with that which the Code defines as 'purpose' and 'knowledge.' *See* § 2C:2-2b. A 'general intent' can be equated with that which the Code defines as 'recklessness,' or criminal 'negligence.'" *Code Commentary* at 68. Therefore, according to the Commissioners, *N.J.S.A.* 2C:2-8(a) and (b) would serve much the same end as was achieved by the common-law approach. Specifically, *N.J.S.A.* 2C:2-8(a) permits evidence of intoxication as a defense to crimes requiring either "purposeful" or "knowing" mental states but it excludes evidence of intoxication as a defense to crimes requiring mental states of only recklessness or negligence.

*N.J.S.A.* 2C:2-8 was modeled after the Model Penal Code (MPC) § 2.08. See *N.J.S.A.* 2C:2-8 (Historical Note). The drafters of the MPC, as did the New Jersey Commission, criticized the specific-general intent distinction, *MPC Commentaries* § 2.08 comment at 353-54 and 357-58, and adopted instead the same four states of culpability eventually enacted in the Code. *MPC Commentaries* § 2.02 comment at 230. In the commentary, the drafters of the MPC expressly stated their intention that intoxication be admissible to disprove the culpability factors of purpose or knowledge, but that for crimes requiring only recklessness or negligence, exculpation based on

intoxication should be excluded as a matter of law. *MPC Commentaries* § 2.08 comment at 354.

The drafters explicitly determined that

intoxication ought to be accorded a significance that is entirely co-extensive with its relevance to disprove purpose or knowledge, when they are the requisite mental elements of a specific crime. * * * [W]hen the definition of a crime or a degree thereof requires proof of such a state of mind, the legal policy involved will almost certainly obtain whether or not the absence of purpose or knowledge is due to the actor's self-induced intoxication or to some other cause. [*Id.* at 357.]

The policy reasons for requiring purpose or knowledge as a requisite element of some crimes are that in the absence of those states of mind, the criminal conduct would not present a comparable danger, or the actor would not pose as significant a threat. *Id.* at 357–58. Moreover, the ends of legal policy are better served by subjecting to graver sanctions those who consciously defy legal norms. *Ibid.* It was those policy reasons that dictated the result that the intoxication defense should be available when it negatives purpose or knowledge. The drafters concluded: "If the mental state which is the basis of the law's concern does not exist, the reason for its non-existence is quite plainly immaterial." *Id.* at 358.

Thus, when the requisite culpability for a crime is that the person act "purposely" or "knowingly," evidence of voluntary intoxication is admissible to disprove that requisite mental state. The language of *N.J.S.A.* 2C:2–8 and its legislative history make this unmistakably clear and lend support to *Stasio* 's and *Atkins'* minority opinions.

## IV

The foregoing discussion establishes that proof of voluntary intoxication would negate the culpability elements in the offenses of which this defendant was convicted. The charges—aggravated assault, possession of a weapon with a purpose to use it unlawfully, and resisting arrest—all require purposeful conduct (aggravated assault uses "purposely" or "knowingly" in the alternative). The question is what level of intoxication

must be demonstrated before a trial court is required to submit the issue to a jury. What quantum of proof is required?

The guiding principle is simple enough of articulation. We need not here repeat the citations to authorities already referred to in this opinion that use the language of "prostration of faculties such that defendant was rendered incapable of forming an intent." Justice Depue's instruction to a jury over a century ago, quoted with approval in *State v. Treficanto, supra,* 106 *N.J.L.* 344 remains good law:

> You should carefully discriminate between that excitable condition of the mind produced by drink, which is not incapable of forming an intent, but determines to act on a slight provocation, and such prostration of the faculties by intoxication as puts the accused in such a state that he is incapable of forming an intention from which he shall act. [*Id.* at 352.]

*See also State v. Stasio, supra:*

> [I]t is not the case that every defendant who has had a few drinks may successfully urge the defense. The mere intake of even large quantities of alcohol will not suffice. Moreover, the defense cannot be established solely by showing that the defendant might not have committed the offense had he been sober. *See Final Report of the New Jersey Criminal Law Revision Commission,* Vol. II, Commentary (1971) at 68. What is required is a showing of such a great prostration of the faculties that the requisite mental state was totally lacking. That is, to successfully invoke the defense, an accused must show that he was so intoxicated that he did not have the intent to commit an offense. Such a state of affairs will likely exist in very few cases.
> [78 *N.J.* at 495 (Pashman, J., concurring and dissenting).]

 So firmly fixed in our case law is the requirement of "prostration of faculties" as the minimum requirement for an intoxication defense that we feel secure in our assumption that the legislature intended nothing different in its statutory definition of intoxication: "a disturbance of mental or physical capacities resulting from the introduction of substances into the body." *N.J.S.A.* 2C:2–8(e)(1). In order to satisfy the statutory condition that to qualify as a defense intoxication must negative an element of the offense, the intoxication must be of an extremely high level. Therefore, consistency between the definition of intoxication and the effect given it by the legislature require that the standard be "prostration of faculties." Less certain is how that standard is to be satisfied.

Cases in which evidence of intoxication was deemed sufficient to present a jury question include *State v. Frankland,* 51 *N.J.* 221 (1968), in which defendant testified that "he had consumed fifteen drinks of scotch and water and could not remember the events of the evening," *id.* at 223; *State v. Polk,* 164 *N.J.Super.* 457 (App.Div.1977), in which the "question of defendant's consumption of alcoholic beverages permeated [the] entire trial" (defendant drank beer and wine from 9 a.m. until sometime in the afternoon; amount of alcoholic beverages consumed was "substantial;" drinking companion had blood-alcohol concentration of 0.158; defendant acted irrationally, hitting baby with his fist and throwing baby down onto a porch; investigator found beer cans strewn around the scene of the killing, *id.* at 460–62); and *State v. Holzman,* 176 *N.J.Super.* 590 (Law Div.1980), in which defendant took four Fiorinal tablets (a mild sedative) with two "Black Russian" drinks prior to her crime; defendant displayed unusual and irrational behavior at the police station and denied all recollection of events occurring one hour prior to her crime. Cases holding that the evidence was insufficient to warrant a jury charge on intoxication are *State v. Selby,* 183 *N.J.Super.* 273 (App.Div.1981), in which defendant shared with three others a marijuana pipe for about ten minutes, as a result of which he felt "high" and "pretty good," *id.* at 276; *State v. Moore,* 178 *N.J.Super.* 417 (App.Div.1981), where defendant shared half of a pint bottle of vodka with her co-defendant, then "had to * * * get another drink to get [her] nerves back up" before joining in the crime, as to the events preceding, during, and following which she had almost total recall, *id.* at 424; *State v. Kinlaw,* 150 *N.J.Super.* 70 (App.Div.1977), in which the evidence was that defendant drank beer between 11 a.m. and 2 p.m. and described himself as "drunk," *id.* at 72; and *State v. Ghaul,* 132 *N.J.Super.* 438 (App.Div.1975), where defendant testified he had been "drinking all day," police officer detected odor of alcohol on defendant's breath and thought his driving was impaired, but "[d]efendant's own testimony indicated he could think clearly," he could describe the pertinent events, and

he had "sufficient presence of mind to take over the driving and to lie to the police * * *." *Id.* at 441.

■ From all of the above we conclude that some of the factors pertinent to the determination of intoxication sufficient to satisfy the test of "prostration of faculties"—a shorthand expression used here to indicate a condition of intoxication that renders the actor incapable of purposeful or knowing conduct— are the following: the quantity of intoxicant consumed, the period of time involved, the actor's conduct as perceived by others (what he said, how he said it, how he appeared, how he acted, how his coordination or lack thereof manifested itself), any odor of alcohol or other intoxicating substance, the results of any tests to determine blood-alcohol content, and the actor's ability to recall significant events.

## V

■ Measured by the foregoing standard and evidence relevant thereto, it is apparent that the record in this case is insufficient to have required the trial court to grant defendant's request to charge intoxication. (We pass the point that unfortunately we are not informed on what the specific request to charge was: it is not included in defendant's appendix, and to the extent that the transcript sheds any light, it is limited to defense counsel's statement to the trial court, asking that "an instruction pursuant to an intoxication defense * * * be given * * * pursuant to *State v. Stasio* * * *.")

True, the victim testified that defendant was drunk, and defendant herself said she felt "pretty intoxicated," "pretty bad," and "very intoxicated." But these are no more than conclusory labels, of little assistance in determining whether any drinking produced a prostration of faculties.

More to the point is the fact that defendant carried a quart of wine, that she was drinking (we are not told over what period of time) with other people on the vacant lot, that about a pint of the wine was consumed, and that defendant did not drink this

alone but rather "gave most of it out, gave some of it out." Defendant's conduct was violent, abusive, and threatening. But with it all there is not the slightest suggestion that she did not know what she was doing or that her faculties were so beclouded by the wine that she was incapable of engaging in purposeful conduct. That the purpose of the conduct may have been bizarre, even violent, is not the test. The critical question is whether defendant was capable of forming that bizarre or violent purpose, and we do not find sufficient evidence to permit a jury to say she was not.

Defendant's own testimony, if believed, would furnish a basis for her actions. She said she acted in self-defense, to ward off a sexual attack by McKinney and others. She recited the details of that attack and of her reaction to it with full recall and in explicit detail, explaining that her abuse of the police officers was sparked by her being upset by their unfairness in locking her up rather than apprehending McKinney.

Ordinarily, of course, the question of whether a defendant's asserted intoxication satisfies the standards enunciated in this opinion should be resolved by the jury. But here, viewing the evidence and the legitimate inferences to be drawn therefrom in the light most favorable to defendant, the best that can be made of the proof of intoxication is that defendant may have been extremely agitated and distraught. It may even be that a fact-finder could conclude that her powers of rational thought and deductive reasoning had been affected. But there is no suggestion in the evidence that defendant's faculties were so prostrated by her consumption of something less than a pint of wine as to render her incapable of purposeful or knowing conduct. The trial court correctly refused defendant's request.

To the extent that the basis for the trial court's ruling lay in its perception that an intoxication defense was inconsistent with self-defense and for that reason could not be allowed, the court was in error. A defendant may of course urge inconsistent defenses, and a trial court must charge the jury on both or all

of them, despite any inconsistency, when there is sufficient evidence to warrant their submission to the jury. Because the evidence was insufficient to justify submission of the intoxication issue to the jury, the trial court's refusal to charge intoxication was correct.

## VI

To recapitulate: (1) under the Code voluntary intoxication is a defense to a criminal charge that contains as an essential element proof that a defendant acted purposely or knowingly; (2) the Code definition of "intoxication" contemplates a condition by which the mental or physical capacities of the actor, because of the introduction of intoxicating substances into the body, are so prostrated as to render him incapable of purposeful or knowing conduct.

It is important to acknowledge as well what this opinion does *not* decide. Because the issues have not, at any point in the trial or appellate proceedings, been briefed or argued, we have not addressed the question of which party has the burden of producing evidence of intoxication when that evidence is relevant to the case, nor which party has the ultimate burden of persuasion and by what standard of proof. We say no more here in that regard than that of course the State always has the burden of establishing all the essential elements of the charge beyond a reasonable doubt. This is, at bottom, a "sufficiency of the evidence" decision.

## VII

Defendant's cross-petition for certification, which we granted, 101 *N.J.* 243 (1985), raised issues of lesser-included offense, prosecutorial comment infringing on defendant's right to remain silent, and excessiveness of sentence. Because the Appellate Division reversed defendant's conviction on the intoxication issue, that court did not reach those other questions. Our grant of certification preserves them, and they are now

ripe for consideration by the Appellate Division. *See, e.g., United States v. Beach*, 324 *U.S.* 193, 196, 65 *S.Ct.* 602, 604, 89 *L.Ed.*2d 865, 967 (1945) ("As the Court of Appeals did not pass upon other grounds for reversal urged by respondent, the case is remanded to it for further proceedings \* \* \*."); *Foreman v. Holsman*, 10 *Ill.*2d 551, 554, 141 *N.E.*2d 31, 33 (1957) ("And since the judgment of reversal by the Appellate Court was based solely upon this erroneous view of the law and for such reason other assignments of error were not considered, the cause must be remanded to that court with directions to consider and pass upon such other questions.").

The judgment below is reversed and the cause is remanded to the Appellate Division for further proceedings consistent with this opinion.

*For reversal and remandment*—Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*For affirmance*—None.