752 A.2d 368 (1998)
331 N.J. Super. 480
STATE of New Jersey
v.
Reuben Warren KEYS, Defendant.
Superior Court of New Jersey, Law Division, Camden County.
Decided December 18, 1998.
*370 David Snyder, for defendant Reuben Warren Keys.
Robert Uyehara, Assistant Camden County Prosecutor, for the State of New Jersey (Lee A. Solomon, Camden County Prosecutor).
*369 McNEILL, J.S.C.
I. BACKGROUND
A. Procedural History
This matter is before the Court as a result of a Petition for Post-Conviction Relief filed by the defendant, who was found guilty on February 16, 1994, of the following six offenses: second degree aggravated assault, contrary to N.J.S.A. 2C:12-1(b)(1) (count one), third degree aggravated assault, contrary to N.J.S.A. 2C:12-1(b)(2) (count two), third degree possession of a weapon, a knife, for an unlawful purpose, contrary to N.J.S.A. *371 2C:39-4(d) (count three), fourth degree unlawful possession of a weapon, a knife, contrary to N.J.S.A. 2C:39-5(d) (count four), fourth degree contempt by purposely or knowingly disobeying a judicial restraining order entered under the "Prevention of Domestic Violence Act of 1990," contrary to N.J.S.A. 2C:29-9(b) (count five), and first degree armed robbery, contrary to N.J.S.A. 2C:15-1 (count six).
On April 8, 1994, the State's application to sentence the defendant as a persistent offender was granted, and an extended term of life imprisonment with a 25 year parole disqualifier was imposed on count six (armed robbery). Counts two, three and four merged into count one, and on count one the defendant was sentenced to a custodial term of 10 years to be served concurrently with the term imposed on count six. On count five, the defendant was sentenced to a custodial term of 18 months to be served concurrently with the terms imposed on counts one and six.
A Notice of Appeal was filed on June 9, 1994, and the Appellate Division affirmed the defendant's conviction and sentence on August 28, 1996. The defendant subsequently filed this Petition for Post-Conviction Relief on May 5, 1997.
B. Statement of Facts
The defendant's convictions stem from a relationship he had with Deborah Thomas. She and the defendant met in May of 1991 and dated one another until July of 1991. Thomas next heard from defendant in August of 1992, when they resumed their relationship and defendant moved into Thomas' home in Paulsboro. Over the next few months, defendant would periodically "beat up" Thomas. Believing defendant's promises not to hurt her again, Thomas did not press charges until November 20, 1992, after defendant came home drunk and threw her against the wall and then down on the floor where he started choking her. Thomas was able to get to the telephone to contact the police who came and arrested the defendant.
Thomas obtained a temporary restraining order against defendant that same day. Both Thomas and defendant appeared before the Family Court Judge on November 25, 1992, where defendant was told to stay away from Thomas, and a final restraining order was issued.
Less than a week later, on December 1, 1992, defendant called Thomas at work in Camden, asking if he could come talk to her. Thomas answered that she did not want to see him and that he should leave her alone. Anticipating a possible confrontation with defendant, Thomas left work early, accompanied by Samuel Futch and Anthony Harris, who agreed to escort her to her car. Sandwiched between the two men, Thomas approached the parking lot some three blocks from her place of work and saw defendant standing by her car. Defendant started walking toward her, and as he neared her, he reached into his inside pocket. Ms. Thomas said to Futch and Harris that the defendant either had a gun or a knife, and she panicked and began running away from the defendant and her two escorts. When defendant caught up to Thomas, he grabbed her by her collar and threw her up against the wall of a building. Defendant beat Thomas with his fist, then took out a long, black-handled steak knife and placed it against her neck. Defendant struck Thomas in the nose with the knife handle, stated "I'm going to kill her," and repeatedly slashed Thomas' face with the blade of the knife, cutting her near her eye, in the space between her eyebrows, just above her nose and on her left jaw. Futch picked up a car brake shoe he found *372 on the ground and struck the defendant in the head. The defendant fell to the ground on top of Thomas, but continued to struggle. Harris continued to hit the defendant, striking him in the face and kicking him until he lapsed into unconsciousness.
II. ANALYSIS
Defendant Reuben Keys advances the following five grounds or bases for relief.
A. Trial counsel was ineffective by failing to move for a severance of Count Five from the Indictment.
B. Trial counsel was ineffective by failing to present the affirmative defense of intoxication on behalf of the defendant.
C. The trial court failed to adequately define "property" to the jury, trial counsel failed to object to the definition, and appellate counsel failed to challenge the definition.
D. Trial counsel was ineffective by failing to call defendant as a witness.
E. Trial counsel was ineffective by failing to investigate information given by the defendant that he had a set of Thomas' car keys in his possession on December 1, 1992.
For the following reasons, all of these bases are without merit, and the defendant's Petition for Post-Conviction Relief must be denied.
A. Trial counsel was not ineffective by not moving for a severance of Count Five from the Indictment.
Defendant contends that his trial counsel was ineffective because he did not move to sever Count Five from the Indictment. Count Five was fourth degree contempt by purposely or knowingly disobeying a judicial restraining order entered under the "Prevention of Domestic Violence Act of 1990," contrary to N.J.S.A. 2C:29-9(b). Defendant's argument is that the evidence and proof needed to satisfy this charge prejudiced him with regard to the other charges against him and that, as a result, his trial counsel should have moved to sever the contempt charge from the rest of the charges. Defendant contends that his attorney's failure to make this motion rises to the level of ineffective assistance. This contention is without merit.
In State v. Fritz, 105 N.J. 42, 519 A.2d 336 (1987), the Supreme Court of New Jersey expressly adopted the federal standard for determining ineffectiveness of counsel claims announced in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). This two prong inquiry considers (1) whether counsel's performance was so deficient that it fell below an objective standard of reasonableness, and (2) whether the alleged deficiency, if proved, resulted in errors which materially contributed to defendant's conviction by depriving defendant of his right to a fair trial. Fritz, 105 N.J. at 52, 519 A.2d 336.
The Supreme Court of New Jersey in Fritz, quoting Strickland, held that "(t)he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial court cannot be relied upon as having produced a just result." Fritz, 105 N.J. at 58, 519 A.2d 336, citing Strickland, 466 U.S. at 686, 104 S.Ct. 2052. The United States Supreme Court in Strickland cautioned that "(b)ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.' " Strickland, 466 U.S. at 689-90, 104 S.Ct. 2052. Accordingly, "(t)he court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the range of professionally competent assistance." Id.
*373 Defendant relies totally on State v. Chenique-Puey, 145 N.J. 334, 678 A.2d 694 (1996) to support his claim that counsel was ineffective in not moving to sever Count Five. In Chenique-Puey, the Supreme Court of New Jersey reversed a decision not to sever a contempt count (stemming from violation of a domestic violence restraining order) from a terroristic threats count. The Court noted that joinder of offenses is governed generally by Rule 3:7-6 which provides in pertinent part:
Two or more offenses may be charged in the same indictment or accusation in a separate count for each offense if the offenses charged are of the same or similar character or are based on the same act or transaction or on 2 or more acts or transactions connected together or constituting parts of a common scheme or plan.
Chenique-Puey, 145 N.J. at 340, 678 A.2d 694.
The Court further noted that:
Mandatory joinder is required when multiple criminal offenses charged are `based on the same conduct or arise from the same episode, if such offenses are known to the appropriate prosecuting officer at the time of the commencement of the first trial and are within the jurisdiction and venue of a single court.'
Id. at 340-41, 678 A.2d 694, citing Rule 3:15-1(b).
Notwithstanding the preference for joinder, Rule 3:15-2(b) vests a trial court with discretion to order separate trials if joinder would unfairly prejudice a defendant. Chenique-Puey, 145 N.J. at 341, 678 A.2d 694, citing State v. Oliver, 133 N.J. 141, 150, 627 A.2d 144. The Rule provides:
If for any other reason it appears that a defendant or the State is prejudiced by a permissible or mandatory joinder of offenses ... in an indictment or accusation the court may order an election or separate trials of counts ... or direct any other appropriate relief.
Chenique-Puey, 145 N.J. at 341, 678 A.2d 694.
It is this language in the Chenique-Puey opinion citing Rule 3:15-2(b) that defendant relies upon in arguing that the indictment should have been severed. However, there is one important distinction between Chenique-Puey and the case at bar. The Court in Chenique-Puey stated:
Central to the inquiry is "whether, assuming the charges were tried separately, evidence of the offenses sought to be severed would be admissible under N.J.R.E. 404(b) in the trial of the remaining charges." State v. Pitts, 116 N.J. 580, 601-02, 562 A.2d 1320. If the evidence would be admissible at both trials, then the trial court may consolidate the charges because "a defendant will not suffer any more prejudice in a joint trial than he would in separate trials." State v. Coruzzi, 189 N.J.Super. 273, 460 A.2d 120. The focus in this case, then, is whether evidence of the issuance of a domestic violence restraining order is properly admissible at both defendant's trials for contempt and terroristic threats to kill.
Chenique-Puey, 145 N.J. at 341, 678 A.2d 694.
Evidence of the domestic violence restraining order was an essential element of the State's proofs on the contempt charge in both the present case and in Chenique-Puey. The difference between the cases, however, is that in Chenique-Puey the Court held that evidence of the restraining order was inadmissible to prove terroristic threats (even for limited 404(b) purposes), whereas the trial court ruled favorably in the present case on the State's 404(b) motion, which allowed evidence of the restraining order to be admitted to show defendant's "intent" with regard to his assault on the victim.
*374 The trial court noted that the prior bad acts that were in dispute in this motion were:
(P)hysical attacks on three, four, five occasions within a period not more remote than four or five months from the stabbing in question ... (a)nd then also with events that caused the restraining order in November of `92, less than a month before the events alleged in the indictment and indeed the matters which caused the restraining order and it's a violation of that restraining order that constitutes one of the charges in the indictment, the contempt charge.
After considering this evidence for 404(b) purposes, the trial court ruled:
I'm satisfied from what I can ascertain that the events are sufficiently similar in that they are assaultive conduct, that they are reasonably close in time, going back at most four or five months and many much more recent than that. The evidence, assuming it will come from the mouth of the victim herself and in light of the restraining order appears to be clear and convincing and I think from my reading of the case law it goes to intent which is an issue genuinely disputed here. The remaining question is whether the probative value is going to be outweighed by the prejudicial value... I am persuaded that the probative value is not outweighed by the prejudicial value of this case and I'm going to allow the prosecutor to present the information over the objection of the defense which is of course noted.
Once the trial court decided to admit the evidence of defendant's past assaults and evidence of the restraining order issued against him for 404(b) purposes in defendant's trial of the assault and robbery charges, it would have been pointless for defendant's trial counsel to request a severance of the contempt count from the other counts. Defense counsel states in his supplemental brief that "had trial counsel made a motion to sever the court would have been bound to sever the counts as it clearly was prejudicial to the defendant to try both the charge of contempt of the domestic violence order and remaining charges together." (Emphasis added.) This is simply not true. As the courts in Chenique-Puey, Pitts, and Coruzzi noted, the basic issue to consider in deciding whether to sever counts from one another is whether evidence of the offenses sought to be severed would be admissible under N.J.R.E. 404(b) in the trial of the remaining charge. In Chenique-Puey the Supreme Court held that evidence of the restraining order would not be admissible in a trial for terroristic threats, but in this case the trial court decided that evidence of the restraining order would be admissible toward the assault and robbery chargesand this decision was affirmed by the Appellate Division. As a result, the trial court would not have granted a severance even if trial counsel had requested one. However, since evidence of the past violent acts and restraining order would have been admitted at a separate trial for assault and robbery, the defendant would have suffered the same amount and the same type of prejudice as he did at the joint trial even if there had been a severance, and the trial court decided that this prejudice was outweighed by the probative value of the evidence.
Defense counsel also points out that the Appellate Division in its opinion made a specific note of the fact that trial counsel did not make a motion to sever and thus held, "He (the defendant), therefore, may not now be heard to assert prejudice from the admission of evidence bearing from the contempt charge in the same trial as the charges on the underlying offenses." State v. Keys, Unpublished opinion, Docket No. A-5368-93T4 (App.Div. August 28, 1996). Defense counsel thus asserts that "the language of the appellate court in the defendant's appeal clearly shows by a preponderance of the evidence that the trial counsel's deficient performance adversely *375 affected the defendant's verdict." However, the appellate court did recognize that the defendant "asserts error in the related and more general sense of having suffered undue prejudice from the receipt of the victim's testimony concerning defendant's prior assaults upon her," and that "the testimony was clearly relevant to issues of motive and intent." So, although the appellate court commented on trial counsel's failure to move to sever the counts, it went on to review the more important, overriding issue, and affirmed the trial court's decision.
Finally, the Court notes that the Chenique-Puey decision which the defendant relies upon as the sole support for his argument was decided in 1996a full two years after the present case was tried. There is no language in the Chenique-Puey decision indicating that the Supreme Court of New Jersey intended for it to have a retroactive effect. Therefore, even if Chenique-Puey were identical to this case, which it is not, this Court would have difficulty in charging defendant's trial counsel with the responsibility of applying jurisprudence which had yet to be developed. After all, the defendant is entitled to competent representation, not clairvoyant representation.
Since the trial court allowed evidence of the restraining order to prove motive and intent with regard to the assault and robbery charges, any effort on the part of trial counsel to sever the contempt count would have been unwarranted and fruitless. Even if the trial court would have granted a severance, it would not have prevented the introduction of the restraining order in the trial of the remaining counts, and thus, nothing would have been gained by a severance. Consequently, defendant has not made the requisite showing that trial counsel was so deficient in his performance that he fell below an objective standard of reasonableness, nor is there any proof that counsel's failure to move for a severance in any way resulted in an error which materially contributed to defendant's conviction by depriving him of his right to a fair trial.
B. Trial counsel was not ineffective by failing to present the affirmative defense of intoxication on behalf of the defendant.
Defense counsel argues that although the defendant did not testify in this case, there was adequate support in the form of medical records to set forth a defense of intoxication. Defense counsel states that "trial counsel had what many defense counsel like to have when trying to establish an affirmative defense for their clients ... independent and unbiased evidence establishing an affirmative defense." Defense counsel points out that, when defendant was taken to the hospital immediately after the incident and treated for alleged stab wounds, his blood was drawn and the laboratory records indicate there was a substantial amount of alcohol detected in the defendant's blood. At the time of his admission, shortly after his arrest, his secondary diagnosis was acute alcohol intoxication. Defense counsel contends that failure by trial counsel not to pursue this intoxication defense, since the defendant was charged with such specific intent crimes as armed robbery and aggravated assault, constituted clearly deficient performance.
The fact that defendant had a blood alcohol level which rendered him medically intoxicated does not, in and of itself, substantiate a legal defense of intoxication. According to N.J.S.A. 2C:2-8(a), intoxication of the actor is not a defense unless it negatives an element of the offense. In order for intoxication to negative an element of the offense, there is a "prostration of faculties" test that must be applied. As the court in State v. Cameron, 104 N.J. 42, 54, 514 A.2d 1302 (1986) stated:
So firmly fixed in our case law is the requirement of "prostration of faculties" as the minimum requirement for an intoxication defense that we feel secure in our assumption that the legislature intended *376 nothing different in its statutory meaning of intoxication: "a disturbance of mental or physical capacities resulting from the introduction of substances into the body." N.J.S.A. 2C:2-8(e)(1). In order to satisfy the statutory condition that to qualify as a defense intoxication must negative an element of the offense, the intoxication must be of an extremely high level.
In further explaining this "prostration of faculties" test, the Court in Cameron quoted Justice Pashman's concurrence and dissent in State v. Stasio, 78 N.J. 467, 495, 396 A.2d 1129 (1979):
(I)t is not the case that every defendant who has had a few drinks may successfully urge the defense. The mere intake of even large quantities of alcohol will not suffice. Moreover, the defense cannot be established solely by showing that the defendant might not have committed the offense had he been sober. (citation omitted) What is required is a showing of such a great prostration of faculties that the requisite mental state was totally lacking. That is, to successfully invoke the defense, an accused must show that he was so intoxicated that he did not have the intent to commit an offense. Such a state will likely exist in very few cases. (Emphasis added)
From all of this, the Court concluded that some of the factors pertinent to the determination of intoxication sufficient to satisfy the test of "prostration of faculties" are the following: the quantity of intoxicant consumed, the period of time involved, the actor's conduct as perceived by others, any odor of alcohol or other intoxicating substance, the results of any tests to determine blood-alcohol content, and the actor's ability to recall significant events. Cameron, 104 N.J. at 56, 514 A.2d 1302.
At the hearing for the post-conviction relief matter presently before the Court, the defendant was questioned by his attorney, the Assistant Prosecutor, and the Court about his conversations with his trial attorney regarding an intoxication defense. The defendant's answers were unclear, confusing, and vague to say the least. It is impossible for the Court to discern from the defendant's testimony whether an intoxication defense ever was discussed between the defendant and his attorney. However, the defendant's trial attorney did testify at the hearing that the intoxication defense was discussed, and that the defendant had told him that on the day of the incident he was not drunk, but that maybe he had drunk one beer. Furthermore, the trial attorney testified that the defendant was consistent in saying that he was the one attacked, and that he was the victim. As a result of these discussions, the trial attorney testified that a self-defense theory was pursued over an intoxication defense. The Court finds the testimony of the trial attorney to be much more credible and clear than that of the defendant
In addition, trial counsel was specifically asked by the court at trial if he and his client considered the information regarding alcohol. Trial counsel responded that the information was considered and reviewed with the defendant and that decisions were made regarding what approach to take with the case. It was further inquired by the court if a potential defense was considered and was tactically decided that it was not in the best interest of the defendant to pursue, and defense counsel responded in the affirmative. Defendant decided instead to pursue a theory which set forth that, because he was stabbed during the altercation, he was in fact the victim, and not Thomas. He tried to persuade the jury that the two individuals that walked Thomas to her car attacked him at her request. This was a tactical decision to pursue one theory over another, and cannot be said to be deficient performance falling beneath objective standards of reasonableness.
*377 C. The trial court adequately defined "property" to the jury.
Defendant, in his pro se brief, argues that it was necessary for the court to give a definition for "anything of value." This term is in fact merely part of the definition of "property." The court, in defining "property," gave the following instruction:
Property itself is defined as anything of value and it includes such things as movable property and real estate, tangible, intangible personal property, contract rights, food, drink, electric, gas, just about anything that has any value can be considered property whether it be movable or permanent.
The definition of "property" for purposes of the theft statute is as follows:
"Property" means anything of value, including real estate, tangible and intangible personal property, trade secrets, contract rights, choses in action and other interests in or claims to wealth, admission or transportation tickets, captured or domestic animals, food and drink, electric, gas, steam or other power, financial instruments, information, data, and computer software, in either human readable or computer readable form, copies or originals.
N.J.S.A. 2C:20-1(g).
Clearly the definition and the trial court's instruction are substantially similar, and the court gave enough examples for the jury to use in making its determination as to whether the property at issue, a car and car keys, were things of value. Consequently, there was no need for trial counsel to object to the instruction or for appellate counsel to raise the issue on appeal.
D. Defendant's claim that counsel was ineffective by not calling him as a witness is without merit.
Defendant claims that if he were called as a witness, he could have provided information to the jury that would aid in his defense. The constitutional right to remain silent can be waived only by the defendant. Counsel cannot force him to testify. Clearly, defendant decided to assert his right to remain silent. This is evidenced in the trial transcript where the court notes that it was the defendant who made the decision not to testify and requested that the court charge on the failure to testify, which was in fact charged. Additionally, if defendant would have chosen to testify, he would have been subjected to rigorous cross-examination as well as confrontation regarding his prior criminal convictions. There is a significant probability that a choice to testify would have been more harmful than helpful to the defendant. As such, any tactical advice trial counsel might have given to defendant to not take the stand cannot be said to be ineffective representation.
E. Counsel did not need to investigate the lost car keys.
Defendant contends in his brief that at the time of his encounter with Thomas on December 1, 1992, he had in his possession a set of keys to Thomas' car and house that were lost sometime subsequent to the incident. His contention in the brief is that this fact would have exonerated him of any need to rob Thomas of the keys, and that, therefore, his trial counsel should have investigated these missing keys. However, at the hearing, defendant testified that he had the keys in his possession two weeks earlier when he was incarcerated in Gloucester County, and it was at that time that Thomas came and retrieved the keys from him. After considering the defendant's testimony, the Court finds no reason why having a set of keys two weeks earlier would have exonerated him of the need to rob Thomas of her keys on December 1, 1992. Therefore, there was no need for trial counsel to investigate anything related to these keys.
*378 III. CONCLUSION
For the foregoing reasons, each of defendant's contentions are without merit, and his petition for post-conviction relief is denied.