**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3871-14T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JANEAN OWENS,

    Defendant-Appellant.

_____

        Submitted November 7, 2016 — Decided  June 8, 2017

        Before Judges Nugent and Haas.

        On appeal from Superior Court of New Jersey,
        Law Division, Middlesex County, Indictment
        Nos. 07-01-00155 and 07-01-00158.

        Joseph E. Krakora, Public Defender, attorney
        for appellant (Kisha M. Hebbon, Designated
        Counsel, on the brief).

        Andrew C. Carey, Middlesex County Prosecutor,
        attorney for respondent (Nancy A. Hulett,
        Assistant Prosecutor, of counsel and on the
        brief).

PER CURIAM

    Defendant Janean Owens appeals from a January 29, 2015

Criminal Part order denying her petition for post-conviction

relief (PCR) without an evidentiary hearing.  We affirm.

In January 2007, a Middlesex County grand jury charged defendant and a co-conspirator in a ten-count indictment with murder and other offenses for shooting the homicide victim in the back of the head and disposing of his body. In 2009, a jury found defendant guilty of first-degree aggravated manslaughter, N.J.S.A. 2C:11-4(a); third-degree conspiracy to commit theft by unlawful taking, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:20-3; two counts of third-degree theft by unlawful taking, N.J.S.A. 2C:20-3; second-degree possession of a weapon for unlawful purposes, N.J.S.A. 2C:39-4(a); third-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b); and fourth-degree certain persons not to have weapons, N.J.S.A. 2C:39-7(a). On the aggravated manslaughter count, the court sentenced defendant to a custodial term of twenty-five years subject to the No Early Release Act, N.J.S.A. 2C:43-7.2(a). The court imposed four-year terms on counts three, five and six, concurrent to each other but consecutive to the sentence for aggravated manslaughter; a concurrent ten-year term with five years of parole ineligibility on count eight; a concurrent five-year term on count nine; and a consecutive eighteen-month custodial term on the certain persons not to have weapons count.

On direct appeal, we affirmed defendant's convictions, reversed the decision to make the four-year aggregate sentence for the theft offenses consecutive to the sentence on the aggravated

manslaughter count, and vacated the sentence for possession of a weapon for an unlawful purpose, which should have been merged. State v. Owens, No. A-0803-09 (App. Div. Sept. 4, 2012) (slip op. at 2). The Supreme Court denied certification. State v. Owens, 215 N.J. 485 (2013).

Five months after the Supreme Court denied certification, defendant filed her PCR petition. In her petition, she alleged her trial counsel was ineffective because he failed to forcefully advocate on her behalf when she was sentenced. She also alleged her due process rights were violated when a defense witness testified in "clearly identifiable prison clothing," and her right to a fair and impartial jury was violated because Juror Number 1 fell asleep several times during the trial.

After defendant filed her PCR petition, the court appointed counsel, who filed a memorandum on behalf of petitioner in support of her petition. The memorandum raised two additional points: trial counsel was ineffective for failing to raise the defenses of diminished capacity and duress. Defendant sought an evidentiary hearing on these issues. Following oral argument, the court denied defendant's petition in a January 29, 2015 order.

On appeal, defendant raises the following arguments:

> POINT I
> THE TRIAL COURT ERRED IN DENYING DEFENDANT'S
> MERITORIOUS PETITION FOR POST[-]CONVICTION

RELIEF OR, AT LEAST, AFFORDING HER AN EVIDENTIARY HEARING TO DETERMINE THE MERITS OF HER CONTENTION THAT SHE WAS DENIED THE RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL.

> A. The Prevailing Legal Principles Regarding Claims Of Ineffective Assistance Of Counsel, Evidentiary Hearings And Petitions For Post[-]Conviction Relief.
>
> B. Trial Counsel Rendered Ineffective Legal Representation By Virtue Of His Failure To Raise The Defense Of Diminished Capacity As A Result Of Defendant's Intoxication During The Incident In Question.
>
> C. The Trial Counsel Rendered Ineffective Legal Representation By Virtue Of His Failure To Raise The Defense Of Duress Which Resulted From Defendant's Relationship With Co-defendant [].
>
> D. Defendant Is Entitled To A Remand To The Trial Court To Afford Her An Evidentiary Hearing To Determine The Merits Of Her Contention That She Was Denied The Effective Assistance Of Trial Counsel.

For the reasons that follow, we reject these arguments and affirm.

The facts underlying defendant's convictions are detailed in our previous opinion and need not be recounted in their entirety. We repeat only those facts relevant to the issues on this appeal:

> On the evening of Thursday, October 19, 2006, Owens went to a bar in Carteret for

4

drinks with Timisha Sanford, whom she had known for about ten years. Robert Funderberk, also known as "EZ," was at the bar and bought drinks for Owens. She knew Funderberk and told Sanford that "he liked her."

When the bar closed at 2:00 a.m., Owens and Sanford left together but headed in different directions. After Sanford had walked a few blocks, Owens "rode up" to her in a gray Suburban driven by Funderberk. Owens asked Sanford to ride with them to purchase cigarettes. Funderberk drove them to Owens' apartment to pick up co-defendant Keith McBride, also known as "Special" or "SP."

When they arrived at the apartment, Owens went upstairs to get McBride. They returned about six or seven minutes later. Owens and McBride then stood behind the Suburban talking "for a minute or two." Sanford exited the vehicle "to see what they [were] talking about. What was going on." McBride told Sanford "to handle it" and "[g]ave her something wrapped up in a red towel." Based on the weight, Sanford thought the towel contained a gun. She said that she "wasn't doing it," and Owens "snatched" the package from her and told her "she was going to get [Funderberk]." Sanford thought they were talking about a robbery.

Owens got back into the Suburban and sat in the back seat behind Funderberk, next to Sanford. McBride sat in the front passenger seat. While Funderberk was driving, Sanford saw that Owens "had a gun in the back of [Funderberk's] head and she asked [McBride] should she pull it." He said "trill," which, according to Sanford, is slang for "yes." Owens then pulled the trigger. Funderberk "[s]lumped to the side," "ran off the road," and the vehicle stopped.

McBride "said what the fuck did you do."
Owens helped McBride move Funderberk to the
front passenger seat. Owens and McBride then
got in the back seat, and McBride told Sanford
to drive to Newark. According to Sanford,
Owens was acting "[l]ike herself" and was
"[n]ot really too bothered."

After they arrived in Newark, McBride
told Sanford to stop the Suburban near a
building because it was a "good place" for the
body. Owens assisted McBride in getting the
body out of the vehicle and placing it next
to a dumpster. They drove away, but
eventually abandoned the Suburban and walked
to the home of Owens' aunt.

[Owens, supra, No. A-0803-09 (slip op. at 2-
4) (alterations in original).]

Defendant confessed to police after they arrested her, though

she claimed the gun "just really went off" while she and McBride

were robbing the victim. Id. (slip op. at 7). She later moved,

unsuccessfully, to suppress her confession. During the hearing

on her motion, she presented the testimony of Dr. Gerald Cooke, a

clinical and forensic psychologist.

According to Cooke, Owens had a borderline
personality disorder with antisocial and
paranoid features, alcohol and drug
dependency, and "adjustment disorder with
mixed anxiety and depressed mood." He opined
that Owens was "very susceptible to being
manipulated by others, though she can also
manipulate others as well." He also described
her as "easily distracted," and as having
"very great difficulty sustaining her
attention." He testified that, if Owens
wanted to terminate questioning, she "doesn't
know how to go about actually doing that, to

6

be assertive to follow through on what she wants."

> Cooke outlined the results of IQ testing, which placed Owens in "the borderline range of intellectual functioning," "at about the fifth percentile of the population." But because she had a tendency to "give[] up almost before she starts," Cooke concluded that the IQ score "really underestimate[d] her ability" and that she was "brighter than that." He estimated Owens' intellectual function as in the low average range.
>
> [Id. (slip op. at 9) (alterations in original).]

On appeal, defendant asserts she should have been granted an evidentiary hearing on her arguments asserting her trial counsel was ineffective for failing to assert defenses of diminished capacity and duress; and the trial court erred by finding to the contrary. We disagree.

We review defendant's arguments under well-known standards. To prove ineffective assistance of counsel, a defendant must satisfy the Strickland two-part test by demonstrating "counsel's performance was deficient," that is, "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 687, 694, 104 S. Ct. 2052,

7

2064, 2068, 80 L. Ed. 2d 674, 693, 698 (1984); accord, State v. Fritz, 105 N.J. 42, 58 (1987). When defendants establish a prima facie claim of ineffective assistance of counsel, they are entitled to a hearing on their claims. State v. Preciose, 129 N.J. 451, 462 (1992); R. 3:22-10(b).

A defendant must establish by a preponderance of the credible evidence that he or she is entitled to the relief requested in the PCR petition. State v. Nash, 212 N.J. 518, 541 (2013) (citations omitted). To sustain that burden, the defendant must allege and articulate specific facts that "provide the court with an adequate basis on which to rest its decision." State v. Mitchell, 126 N.J. 565, 579 (1992). In other words, a defendant must do more than make bald assertions that he was denied effective assistance of counsel; he must allege specific facts sufficient to demonstrate counsel's alleged substandard performance. State v. Cummings, 321 N.J. Super. 154, 170 (App. Div.), certif. denied, 162 N.J. 199 (1999).

Here, defendant first argues her trial counsel was ineffective for failing to raise the defense of diminished capacity "as a result of [her] intoxication during the incident in question." She asserts she informed an expert as well as the police during her interrogation that she had consumed large quantities of alcohol immediately before the shooting and that she

A-3871-14T3

consumed alcohol and drugs on a daily basis. Her specific allegation is her attorney "at no time . . . call[ed] the expert, namely, Dr. Gerald Cooke, to testify at trial about defendant's intoxication."

It is difficult to determine whether defendant is claiming her trial counsel should have pursued a defense based on diminished capacity, intoxication, or both. Defendant cites N.J.S.A. 2C:4-2 and asserts the statute governs the diminished capacity defense. The statute permits a defendant to admit evidence she "suffered from a mental disease or defect . . . whenever it is relevant to prove that the defendant did not have a state of mind which is an element of the offense." Ibid. Defendant identifies no mental disease or defect specifically, but rather discusses her intoxication on the night of the homicide, and asserts her trial attorney should have called Dr. Cooke as a witness to testify about her intoxication.

Defendant's argument overlooks N.J.S.A. 2C:2-8(c), which provides that "[i]ntoxication does not, in itself, constitute mental disease within the meaning of chapter 4." To the extent defendant is asserting trial counsel should have asserted a defense of intoxication, the defense fails for two reasons. First, though Dr. Cooke diagnosed defendant with alcohol and drug dependency, he did not opine she was intoxicated to the extent her "mental or

physical capacities . . ., because of the introduction of intoxicating substances into the body, [were] so prostrated as to render [her] incapable of purposeful or knowing conduct." State v. Cameron, 104 N.J. 42, 58 (1986). Rather, he opined, "[u]nder the circumstances of intoxication, combined with being surprised by the plan to rob [the victim] and the presence of a gun, it is consistent that she would have felt threatened and intimidated by [the co-defendant], and that this would have been a contributing factor to her commission of the offense." Second, "[w]hen recklessness establishes an element of the offense, if the actor, due to self-induced intoxication, is unaware of a risk of which he would have been aware had he been sober, such unawareness is immaterial." N.J.S.A. 2C:2-8(b); see also, State v. Baum, 224 N.J. 147, 162 (2016). Defendant has not explained how intoxication would have changed the outcome of her conviction for aggravated manslaughter.

Defendant's second argument — her attorney was ineffective for failing to assert the defense of duress by the co-defendant — is without sufficient merit to warrant extended discussion. R. 2:11-3(e)(2). The trial court, before trial, excluded Dr. Cooke's testimony concerning defendant's mental health as to the defense of duress. The court did not exclude the doctor's testimony concerning certain other issues. Defendant has not appealed the

10

trial court's pre-trial ruling. Moreover, "[i]n a prosecution for murder, the defense of duress is only available to reduce the degree of the crime to manslaughter." N.J.S.A. 2C:9-3(b). Defendant's speculation the jury might have found her guilty of a lesser degree of manslaughter is precisely the type of bald assertion that is inadequate to sustain an ineffective-assistance claim. Cummings, supra, 321 N.J. Super. at 170.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3871-14T3