**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0846-21

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

WILFREDO SANCHEZ, a/k/a
WILFREDO SAGASTUME,

    Defendant-Appellant.

_____

Submitted December 6, 2023 – Decided January 12, 2024

Before Judges Currier and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 11-11-1892.

Joseph E. Krakora, Public Defender, attorney for appellant (Richard Sparaco, Designated Counsel, on the brief).

Mark Musella, Bergen County Prosecutor, attorney for respondent (William P. Miller, Assistant Prosecutor, of counsel and on the brief; John J. Scaliti, Legal Assistant, on the brief).

Appellant filed a pro se supplemental brief.

PER CURIAM

Defendant Wilfredo Sanchez appeals from a March 20, 2020 order denying his first petition for post-conviction relief (PCR) without an evidentiary hearing. Defendant raised various claims of ineffective assistance of his trial, appellate, and PCR counsel. For the reasons that follow, we affirm.

I.

The parties are familiar with the procedural history and facts of this case, and therefore, they will not be repeated in detail here.[1] A Bergen County grand jury charged defendant in nine counts of a ten count indictment with first-degree murder, 2C:2-6 and 2C:11-3(a)(1) and (2); second-degree desecration of human remains, N.J.S.A. 2C:2-6 and 2C:21-1(a); second-degree disturbing, moving, or concealing human remains, N.J.S.A. 2C:2-6 and 2C:22-1(a); two counts of possession of a weapon, a knife, for an unlawful purpose, N.J.S.A. 2C:2-6 and 2C:39-4(d); two counts of unlawful possession of a weapon, N.J.S.A. 2C:39-5(d); and two counts of third-degree hindering apprehension, N.J.S.A. 2C:29-3(b)(1) and -3(b)(4). A jury found defendant guilty on all counts.

---

[1] The chronology is set forth in this court's unpublished decision affirming defendant's conviction and sentence. State v. Sanchez, No. A-5951-13 (App. Div. Aug. 19, 2016). We incorporate, by reference, the facts stated in our prior opinion.

A-0846-21

After merging certain counts, the trial court sentenced defendant to life imprisonment on the first-degree murder charge subject to the No Early Release Act, N.J.S.A. 2C:43-7.21; a consecutive ten-year custodial term on the second-degree desecration of human remains count; a concurrent ten-year custodial term on the second-degree disturbing human remains count; concurrent five-year custodial terms on the two third-degree counts of possession of a weapon for an unlawful purpose; a consecutive five-year custodial term on one count of third-degree hindering apprehension; and a concurrent five-year custodial term on the other third-degree count of hindering apprehension.

Defendant and co-defendant Pedro Garcia brutally murdered and dismembered the victim. Detectives obtained recorded surveillance videos from two businesses and a home near the victim's apartment depicting defendant and Garcia carrying garbage bags during the early morning of the homicide. Defendant and Garcia were tried separately.

Garcia testified against defendant at trial and placed him at the crime scene. Garcia explained how defendant grabbed the victim, pulled him, repeatedly hit him, and knocked him to the floor. The victim bled from his mouth and back. According to Garcia, defendant then grabbed the victim by the hand, escorted him into the bathroom, and started running water, which the

3

victim said was too hot. An argument ensued, Garcia became enraged and cut the victim's neck with a knife from the kitchen apartment. Garcia gave defendant the knife. The victim told defendant to call an ambulance, but instead, defendant cut the victim in the stomach with a different knife retrieved from the kitchen.

As the victim begged for his life, defendant and Garcia decided to "finish him off." Garcia stabbed the victim in the neck a second time. Defendant and Garcia proceeded to dismember the victim's body, placed the dismembered body parts into separate garbage bags, and dumped them at a church, a construction site, and a hardware store. The State presented considerable forensic and circumstantial evidence corroborating defendant's participation in the homicide.

Defendant, represented by counsel, filed a petition for PCR in 2019, claiming he was denied the right to effective assistance of counsel under the Sixth Amendment of the United States Constitution, and Article I, Paragraph 7 of the New Jersey Constitution. In his first PCR petition, defendant alleged he received ineffective assistance of trial counsel based on the following errors: (1) failure to review discovery and discuss the case with defendant; (2) failure to investigate the facts of the case, interview, and call witnesses to testify at trial; and (3) failure to raise an intoxication defense. Defendant also claimed his

4

appellate counsel was ineffective for failing to raise "all applicable legal challenges on direct appeal."

On September 2, 2019, a second PCR counsel filed a letter brief in support of defendant's first PCR petition asserting trial counsel was ineffective in not adequately reviewing discovery with defendant, not discussing possible trial defenses, not discussing possible trial strategy that could have impacted his decision on whether or not to testify, and failing to investigate defense witnesses.

PCR counsel further contended that trial counsel was ineffective in not interviewing and calling four "character" witnesses: Sonia Cruz, Gladys Carbonel, Gloria Gomez, and Melissa Gonzalez to testify at trial. The prosecution's theory was that defendant and the victim were in a homosexual relationship. These individuals submitted similar statements attesting to knowing defendant for many years, being familiar with his personal life, and his "kind, polite, and non-confrontational" character. The character witnesses also stated defendant told them he was "friendly" with the victim and Garcia. None of the witnesses believed defendant was a gay man. According to defendant, Gonzalez could have testified the victim told her several times prior to his death that he was involved in a romantic relationship with Garcia and that Garcia was

5

physically abusive. Gonzalez also stated the victim showed her a "purple bruise" he sustained when Garcia assaulted him one or two days earlier.

PCR counsel averred that such testimony would have shown that Garcia was involved in a romantic relationship with the victim, which gave rise to the homicide, not a relationship between defendant and the victim. PCR counsel further posited that Gonzalez's testimony would have supported defendant's position that Garcia threatened defendant and his family if he did not help Garcia dismember the victim's body after the murder.

On January 10, 2020, the PCR court heard oral argument on defendant's PCR petition and reserved decision. On March 20, 2020, the PCR court issued an order denying defendant's PCR application without a hearing, accompanied by a thorough written opinion. The PCR court found defendant's PCR petition was timely filed and not procedurally barred under Rule 3:22-12(a)(1). The PCR court noted defendant "did not expressly state in his verified petition that he would have elected to testify at trial" and "did not expressly allege [trial counsel] failed to call character witnesses." However, the PCR court addressed these specific allegations as briefed by superseding PCR counsel.[2]

---

[2] The PCR court highlighted that defendant's PCR petition alleged trial counsel did not discuss a defense of intoxication, but PCR counsel did not pursue it, and the PCR court deemed that claim abandoned.

Regarding the witnesses, the PCR court found defendant's arguments were contravened by the record. The PCR court noted only three people were present in the "studio" apartment when the crimes were committed—defendant, Garcia, and the deceased victim. Therefore, the PCR court reasoned that there were no defense witnesses who could have "personal knowledge" as to what occurred at the crime scene. The PCR court determined Gonzalez could not have testified the victim told her that he was in a romantic relationship with Garcia and Garcia was "physically abusive" under N.J.R.E. 803(c)(2), the "Excited Utterance" rule.

The PCR court reasoned that Rule 803(c)(2) is an exception to the hearsay rule and allows a statement to be admissible if it relates " to a startling event . . . made while the declarant was under the stress of excitement caused by the event . . . without the opportunity to deliberate or fabricate." Since the purported statements were made by the victim to Gonzalez on different dates when he was not under duress, the PCR court determined her testimony would have been deemed inadmissible under Rule 803(c)(2).

Regarding the "purple bruise," the PCR court explained it would take a day or two for the skin to turn that color following an assault. Thus, the PCR court found when the victim made his statement about the purple bruise to

A-0846-21

Gonzalez, he was no longer "under the stress of the event," would have had time to deliberate, and "this testimony would not have been admissible."

The PCR court emphasized a State witness, Nelly Torres, one of the three tenants living in the same apartment building where the victim lived, testified she "actually saw" Garcia physically abuse the victim, and so the jury heard evidence similar to what defendant now sought to introduce. The PCR court noted Torres testified that the victim and Garcia were in a relationship. Therefore, the PCR court found Gonzalez's contemplated testimony that the victim told her he was romantically involved with Garcia would have been "cumulative," and defendant did not establish "a reasonable probability" the outcome of the trial would have been different had she testified. The PCR court also noted Dora Gonzalez, the victim's sister, testified she spoke to her brother daily, and he told her defendant was his partner, and that Sergeant Sean Mackay testified Garcia "admitted to him that he was the victim's boyfriend."

The PCR court determined the four character-witness statements attesting to defendant being a homosexual had no bearing on the outcome of the case because the trial was about "murder and accomplice liability" and not "sexual preference." Thus, the PCR court rejected defendant's argument that establishing he was not a homosexual would have any bearing on the outcome

8

of the case. The PCR court explained that the evidence clearly showed trial counsel and defendant discussed his right to testify on the record, and the trial court afforded defendant a "brief recess" to discuss the issue further.

In addition, the PCR court noted defendant had a three-day weekend to "reconsider whether he would testify or not." The PCR court emphasized that defendant's PCR petition did not represent that he would have testified or how his own testimony could be used "to create a trial strategy." The PCR court concluded defendant failed to make a prima facie showing under the first and second Strickland[3] prongs.

On August 20, 2021, defendant filed a second PCR petition. On October 28, 2021, the PCR court conducted a hearing. Defendant was present, represented by new counsel, and had the aid of a Spanish interpreter. Under oath, defendant testified he never received the PCR court's March 20, 2020 order and decision denying his first PCR and therefore, never appealed from that decision. The PCR court accepted the excuse and provided counsel the decision and order, advising defendant could appeal from the order. The second PCR petition was denied without prejudice subject to defendant filing an appeal from the March 20, 2020 order, which is the matter under review.

---

[3] Strickland v. Washington, 466 U.S. 668, 687 (1984).

On appeal, defendant raises the following points for our consideration:

POINT I

THE PCR COURT ERRED IN NOT GRANTING DEFENDANT AN EVIDENTIARY HEARING ON HIS CLAIM THAT, DUE TO INEFFECTIVE ASSISTANCE OF COUNSEL, HE WAS DENIED THE RIGHT TO TESTIFY AT TRIAL.

POINT II

THE ORDER DENYING DEFENDANT'S FIRST PCR PETITION MUST BE REVERSED AND REMANDED BECAUSE THE PCR COURT DID NOT CONDUCT ORAL ARGUMENT AND FAILED TO STATE ANY REASON FOR NOT DOING SO. (Not Raised Below.)

POINT III

THE PCR COURT ERRED IN FAILING TO CONSIDER DEFENDANT'S CLAIM THAT HE WAS DENIED THE RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL BECAUSE OF COUNSEL'S FAILURE TO RAISE THE INTOXICATION DEFENSE.

POINT IV

THE CUMULATIVE EFFECT OF THE REMAINING ARGUMENTS DESERVE EX[PL]ORATION AT AN EVIDENTIARY HEARING.

In his self-authored supplemental brief, defendant raises the following two points:

10

POINT I

THE PCR COURT ERRED IN NOT CONDUCTING
AN ORAL ARGUMENT IN WHICH DEFENDANT
COULD ARGUE HIS LEGAL ISSUES SUCH AS
INEFFECTIVE ASSISTANCE OF TRIAL AND
DIRECT APPEAL COUNSELS (sic).

POINT II

THE TRIAL COURT ERRED WHEN IT DID NOT
SUA SPONTE CHARGE THE JURY WITH LESSER-
INCLUDED OFFENSES BECAUSE THERE WAS
MORE THAN AMPLE EVIDENCE TO SUPPORT
THAT DEFENDANT DID NOT KILL [THE
VICTIM].

We disagree with defendant's contentions and affirm.

II.

In the absence of an evidentiary hearing, we review de novo the factual
inferences drawn from the record by the PCR judge as well as the judge's legal
conclusions.  State v. Harris, 181 N.J. 391, 421 (2004); see also  State v.
Aburoumi, 464 N.J. Super. 326, 338-39 (App. Div. 2020).  We review a PCR
judge's decision to deny a defendant's request for an evidentiary hearing under
an abuse of discretion standard.  See State v. L.G.- M., 462 N.J. Super. 357, 365
(App. Div. 2020).

A petitioner must establish entitlement to "PCR by a preponderance of the
evidence."  State v. O'Donnell, 435 N.J. Super. 351, 370 (App. Div. 2014).

A-0846-21

Additionally, a petitioner is not automatically entitled to an evidentiary hearing by simply raising a PCR claim. State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999).

To succeed on a claim of ineffective assistance of counsel, a defendant must satisfy both prongs of the test set forth in Strickland, as adopted by State v. Fritz, 105 N.J. 42, 58 (1987), by a preponderance of the evidence. "First, the defendant must show that counsel's performance was deficient." Strickland, 466 U.S. at 687. This requires demonstrating that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Ibid. The United States Constitution requires "reasonably effective assistance." Ibid. An attorney's performance will not be deemed deficient if counsel acted "within the range of competence demanded of attorneys in criminal cases." Ibid. (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). Therefore, "[w]hen a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88.

When assessing the first Strickland prong, "[j]udicial scrutiny of counsel's performance must be highly deferential," and "every effort [must] be made to

eliminate the distorting effects of hindsight." Id. at 689. "Merely because a trial strategy fails does not mean that counsel was ineffective." State v. Bey, 161 N.J. 233, 251 (1999). Thus, a trial court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and "the defendant must overcome the presumption that, under the circumstances, the challenged action [by counsel] 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). Further, the court must not focus on the defendant's dissatisfaction with counsel's "exercise of judgment during the trial . . . . while ignoring the totality of counsel's performance in the context of the State's evidence of [the] defendant's guilt." State v. Castagna, 187 N.J. 293, 314 (2006).

Under the second prong of the Strickland test, the defendant must show "the deficient performance prejudiced the defense." 466 U.S. at 687. This means "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Ibid. It is insufficient for the defendant to show the errors "had some conceivable effect on the outcome." Id. at 693. Ultimately, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if [it] had no effect on the judgment." Id. at 691.

A-0846-21

A.

Here, defendant contends his trial counsel was deficient in not properly advising him as to his right to testify. Defendant avers the trial court should not have focused on whether he and his trial counsel discussed the right to testify, but rather whether defendant understood his right. Defendant's claim is unsupported by the record.

During the trial, the judge asked defendant if he had the opportunity to speak with his attorney about whether he was going to testify, and defendant responded, "yes." The trial judge then proceeded to ask defendant whether it was his decision to testify or not to testify after reviewing all of the discovery and applicable law, and defendant responded, "not to testify." The trial judge then proceeded to confirm that defendant's decision was voluntary, and he responded, "yes." Defendant was also questioned by the trial judge if he was satisfied with his trial counsel's explanation of the different consequences and implications of not testifying and defendant responded, "yes."

Defendant's claim is belied by the record, which clearly established trial counsel and defendant discussed his right to testify. Moreover, the trial judge allowed defendant a "brief recess" to discuss the issue further, and the PCR court correctly pointed out defendant had a three-day weekend to reconsider his

14

decision on whether to testify or not. We are unpersuaded by defendant's argument and are convinced the PCR court correctly determined defendant failed to sustain his burden on this issue under both prongs of the <u>Strickland</u> standard.

Because trial counsel discussed defendant's right to testify with him, there was no deficient performance. And, defendant did not state he wanted to testify in his petition. Garcia testified as to defendant's actions in killing and dismembering the victim. Moreover, there was overwhelming evidence of defendant's guilt including the surveillance video of defendant carrying garbage bags out of the apartment, which contained the victim's body parts. Consequently, the PCR court did not err in denying defendant PCR on this claim.

B.

Next, defendant argues the PCR court erred by not granting oral argument on his petition and the only hearing conducted was on October 28, 2021. Defendant is mistaken. On January 10, 2020, the PCR court heard oral argument on defendant's PCR petition during which PCR counsel presented argument.

C.

Next, defendant contends his PCR counsel was ineffective for not raising an intoxication defense in his supplemental PCR brief, which was raised in

defendant's pro se petition, causing the PCR court to deem the claim abandoned. Defendant is correct that he raised the intoxication issue in his pro se PCR petition, that his PCR counsel failed to argue the defense in his supplemental pro se brief, and the PCR court failed to expressly address this argument in denying PCR because the PCR court considered the claim abandoned.

The PCR court should have made findings of fact and conclusions of law with respect to the intoxication defense because the issue was raised before it. R. 1:7-4(a). However, in reviewing defendant's claims under the de novo standard of review, Harris, 181 N.J. at 419-20, and in light of the record, it is clear the intoxication claim is without merit, and it fails to establish a deficiency that would satisfy either of Strickland's two prongs.

Regarding the first Strickland prong, defendant has failed to show that his trial counsel's decision not to pursue an intoxication defense and his PCR counsel's failure to address this issue in his supplemental brief fell below the standard of a reasonably competent criminal defense attorneys. To successfully invoke the intoxication defense, an accused must show he or she is so intoxicated that he or she did not have the intent to commit an offense. State v. Cameron, 104 N.J. 42, 54 (1986).

Defendant has failed to present prima facie evidence of a viable intoxication defense. Thus, trial and PCR counsel were not ineffective for failing to raise the defense. See State v. Worlock, 117 N.J. 596, 625 (1990) (holding "the failure to raise unsuccessful legal arguments does not constitute ineffective assistance of counsel").

Defendant also failed to satisfy the second Strickland prong because he did not offer any argument in either his PCR petition or in his merits brief on appeal, as to how the purported error would have changed the outcome of the trial. Defendant only stated the contention as an error.

"The defendant 'must allege facts sufficient to demonstrate counsel's alleged substandard performance.'" State v. Jones, 219 N.J. 298, 311-12 (2014) (quoting State v. Porter, 216 N.J. 343, 355 (2013)). Defendant provided no facts or certification to support his claim. See Cummings, 321 N.J. Super. at 170 (explaining a PCR petition claim of ineffective assistance of counsel must be "supported by affidavits or certifications based upon the personal knowledge of the affidavit or the person making the certification"). Defendant's bare assertion does not satisfy the existing standard required by Strickland's second prong.

D.

Defendant argues the cumulative effect of trial counsel's ineffectiveness in failing to call certain witnesses to testify at trial; failure to review discovery or discuss the facts of the case with him; and failure to discuss the intoxication defense warrants an evidentiary hearing. Defendant also maintains appellate counsel was ineffective and his interpreters' services were deficient. We reject these arguments.

As discussed, defendant has not established ineffective assistance of either trial or appellate counsel. The representation was not deficient, and defendant cannot demonstrate the outcome of the proceeding would have been any different.

The State's case was strong: the victim knew defendant and Garcia; the murder took place in the victim's apartment; Garcia testified against defendant; and the surveillance video depicted defendant carrying garbage bags out of the apartment.

Defendant failed to carry his burden of affirmatively proving prejudice. Therefore, the cumulative error doctrine is of no moment. See State v. Cotto, 471 N.J. Super. 489, 547 (App. Div. 2022) (holding "even when an individual error or series of errors does not rise to reversible error, when considered in

combination, their cumulative effect can cost sufficient doubt on a verdict to require reversal").

Defendant's argument that appellate counsel was ineffective is unavailing because defendant has not articulated what arguments should have been briefed on appeal, but were not. Therefore, defendant cannot sustain this assertion.

E.

In his pro se supplemental brief, defendant argues the trial judge erred when she did not sua sponte charge the jury with lesser included offenses because he claims Garcia killed the victim. Defendant also asserts that his trial counsel was ineffective for not asking the trial judge to include lesser-included charges on the verdict sheet because the jury had no other option but to find him guilty of first-degree murder.

It is well established that PCR proceedings are not an opportunity to re-litigate claims already decided on the merits in prior proceedings. State v. McQuaid, 147 N.J. 464, 483 (1997). Therefore, "[a] prior adjudication on the merits ordinarily constitutes a procedural bar to the reassertion of the same ground as a basis for post-conviction review." Preciose, 129 N.J. at 476. Similarly, Rule 3:22-5 also states, "[a] prior adjudication upon the merits of any ground for relief is conclusive whether made in the proceedings resulting in the

19

conviction or in any post-conviction proceeding brought pursuant to this rule or prior to the adoption thereof, or in any appeal taken from such proceedings."

In our opinion on the direct appeal, we addressed defendant's arguments as to whether the trial judge erred by omitting to instruct the jury on passion-provocation manslaughter, reckless manslaughter, and aggravated assault. We found the record lacked any evidence to support a charge on lesser-included offenses. Sanchez, slip op. at 7-15. Since defendant's claim does not fall under the limited purview of Rule 3:22-5, and the issue was raised and adjudicated on his direct appeal, he is procedurally barred from re-litigating this claim.

F.

Finally, a defendant bears the burden of establishing a prima facie claim prior to the grant of an evidentiary hearing. State v. Gaitan, 209 N.J. 339, 350 (2012). A defendant is entitled to an evidentiary hearing if the facts viewed "in the light most favorable to defendant," would entitle him to PCR. State v. Marshall, 148 N.J. 89, 158 (1997) (quoting State v. Preciose, 129 N.J. 451, 462-63 (1992)); R. 3:22-10(b). "If, with the facts so viewed, the PCR claim has a reasonable probability of being meritorious, then the defendant should ordinarily receive an evidentiary hearing in order to prove his entitlement to relief." Jones, 219 N.J. at 311. A defendant must "do more than make bald

assertions that he was denied the effective assistance of counsel" to establish a prima facie claim entitling him to an evidentiary hearing. Cummings, 321 N.J. Super. at 170. On this record, defendant has been unable to demonstrate a hearing is warranted.

Defendant's remaining arguments lack sufficient merit to warrant any further discussion in our opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION