**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2540-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

SQUIRE FOSTER, a/k/a
MICHAEL DARBY,
SQUIRE JOHNSON,
SQUIRE EMANUEL
FOSTER, and SQUIRE
EMMANUEL FOSTER,

    Defendant-Appellant.

_____

Submitted June 5, 2024 – Decided July 3, 2024

Before Judges Currier and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 17-01-0012.

Jennifer Nicole Sellitti, Public Defender, attorney for appellant (Susan Brody, Designated Counsel, on the brief).

Esther Suarez, Hudon County Prosecutor, attorney for respondent (Patrick R. McAvaddy, Assistant Prosecutor, on the brief).

PER CURIAM

Defendant Squire Foster appeals from a March 2, 2023 Law Division order entered by Judge Vincent J. Militello denying his petition for post-conviction relief (PCR) without an evidentiary hearing. We affirm.

I.

We briefly summarize the pertinent facts, which are recounted in our prior unpublished opinion. State v. Foster, No. A-0069-17 (App. Div. Sept. 26, 2019) (slip op. at 2-14). There, we stated defendant was charged with:

> second-degree aggravated assault by purposely or knowingly causing, or attempting to cause, serious bodily injury to David Halley, [an acquaintance,] N.J.S.A. 2C:12-1(b)(1) (count one); first-degree robbery of Halley, N.J.S.A. 2C:15-1(a)(1) (count two); third-degree criminal restraint of Halley in circumstances exposing him to risk of serious bodily injury, N.J.S.A. 2C:13-2(a) (count three); third-degree making terroristic threats to Halley and Antanine Hodge, [his then girlfriend,] N.J.S.A. 2C:12-3(b) (counts four and seven, respectively); fourth-degree unlawful possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-5(d) (count five); third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d) (count six); and criminal restraint of Hodge by holding her in a condition of involuntary servitude, N.J.S.A. 2C:13-2(b) (count eight).

[Id. at 2-3.]

Prior to trial, Judge Militello, who was also the trial judge, conducted a Wade[1] hearing and determined "the State could admit a statement Hodge provided to law enforcement, in which she identified defendant." Id. at 3. The judge also made other rulings not pertinent to this appeal. Ibid. At trial, Halley testified that he and defendant knew each other and sometimes met in the morning to "go get coffee." Ibid.

On September 3, 2016, in the early morning hours, defendant arrived at Halley's apartment, who got dressed, and left with defendant. Id. at 3-4. They went to defendant's rooming house, where he resided with Hodge. Id. at 4. Halley claimed defendant had a "hostile" conversation with Hodge about her "cheating on him" and "a condom situation." Ibid. Defendant stabbed Halley in the thigh with something sharp, which caused a "big gash," and "spill[ed] blood." Ibid. Defendant demanded the "truth" about Halley and Hodge's "relationship" and threatened to kill Halley. Id. at 8.

---

[1] United States v. Wade, 388 U.S. 218 (1967). See generally State v. Henderson, 208 N.J. 208 (2011) (explaining that a Wade/Henderson hearing is a pretrial hearing that assesses the reliability of a witness identification procedure through witness testimony to determine the admissibility of an out-of-court identification of a defendant).

A-2540-22

Halley testified that defendant had been drinking liquor, which contained "Molly," a drug also known as "Ecstasy." Id. at 4. Defendant forced Halley to drink and smoke as a "truth serum." Defendant accused Halley of sleeping with Hodge, who was his "woman," and took Halley's two cell phones to check if Hodge's number was on it for evidence of "infidelity" between Halley and Hodge. Id. at 5. Halley testified at trial that defendant examined the cell phones for almost an hour and "struggled" to go through the files. Defendant then stabbed Halley in the leg several times with a knife, held him "hostage," and "tormented" him for several hours. Ibid. When Halley tried to leave the room, he jumped behind Hodge. Ibid. "Defendant told Hodge if he had to 'hurt' Halley [then] he was going to kill her too." Ibid. Hodge escaped the room, leaving Halley behind with defendant. Ibid.

Defendant stabbed Halley in his chest, back, and kidney area. Ibid. According to Halley, defendant stabbed him under his rear end "closer to the testicles." Ultimately, Halley left and "stumbled down the steps." Id. at 6. He was transported to the hospital, where he was treated for his injuries. Ibid. Defendant was arrested after Halley escaped.

Hodge testified that on the day of the incident, she had been drinking and her memory was "kind of fuzzy." Ibid. She did not recall seeing defendant with

a knife or stabbing Halley. Ibid. Hodge provided a recorded statement to the police on the day of the incident, which was admitted and played for the jury following a Gross[2] hearing. Id. at 6-7.

In her statement, Hodge claimed that defendant implied she and Halley had sex in the bathroom, which she denied. Id. at 7. Defendant accused her of lying. Ibid. According to Hodge, defendant persisted in questioning her and Halley about the alleged sexual encounter and then stabbed Halley in the leg. Hodge observed Halley was bleeding. Ibid. She stated defendant "looked really agitated" and went on a rant, called her a "bitch," and told her to shut "the f*** up." Id. at 7-8. In her statement, Hodge mentioned defendant was "high" when he stabbed Halley and was "doing something . . . other than [it being] adrenaline." Ibid.

According to Hodge, "[d]efendant told Halley he had 'violated' him and 'this is [his] justice for doing it.'" Id. at 8. "Defendant stated . . . Halley could not leave the room until he told the truth, and that he would not let him leave with his life. Defendant punched Halley in the face." Ibid. Defendant

---

[2] State v. Gross, 121 N.J. 1 (1990). A Gross hearing is a "hearing that the trial court conducts to determine the admissibility of a witness's inconsistent out-of-court statement—offered by the party calling that witness—by assessing whether the statement is reliable." State v. Greene, 242 N.J. 530, 540 n.2 (2020).

threatened to "cut" Hodge if she did not move. Ibid. Hodge left and saw defendant stab Halley as she ran out of the room. Ibid. Hodge ran to her daughter's room in the same rooming house. Defendant and Halley left the house, and the police arrived ten minutes later. Ibid.

Halley had a total of nine stab wounds, which were not life-threatening. Id. at 9. Officer Sean Butler responded to the scene and spoke with Hodge, who pointed out a man walking down the street and indicated he had just stabbed "somebody," and the victim was in the backyard of a residence on the street. Ibid. Butler found Halley in the yard, who was bleeding heavily, but was conscious. Ibid. Halley gave Butler a description of the perpetrator. Ibid.

Officer Steven Dua testified he responded to the report of a domestic violence incident and possible stabbing. Id. at 10. Dua saw defendant walking down the street and ordered him to the ground. Ibid. Officer Jorge Lopez also responded to the scene, and he, along with other officers, located defendant and handcuffed him. Ibid.

Defendant testified that he resided with Hodge in the rooming house. Ibid. He met Halley a month or two earlier. Ibid. Defendant claimed he and Halley used illicit drugs every day. Id. at 10-11. On the day in question, defendant testified he called Halley because he had "some good stuff." Id. at 11.

Defendant met Halley at his girlfriend's apartment, which was nearby. Ibid. According to defendant, Halley had an argument with his girlfriend. Ibid. Defendant and Halley left and walked to the rooming house. Ibid.

Defendant testified the two were "already high" and were "popping [M]olly." Ibid. During the encounter, defendant claimed he consumed alcohol and smoked PCP.[3] After Halley went to use the bathroom, defendant checked on him because he was "taking long." Id. at 12. Defendant previously found a condom in the bathroom and felt Halley made some "strange comments" because he thought Halley was "boasting" about it. Id. at 11.

Defendant testified he and Halley went back into the room. Id. at 12. Halley mentioned he knew Hodge's daughter and her friend. Ibid. Defendant claimed he never mentioned the condom to Halley because Hodge said she never saw Halley before. Ibid. Defendant recalled arguing with Halley but did not remember what they were arguing about. Ibid. Defendant claimed he did not recall what happened after that. Ibid.

On cross-examination, defendant admitted a photograph taken of him when he was arrested showed his pants covered in blood. Ibid. He denied sustaining injuries that day and claimed any blood on his pants was not his. Ibid.

---

[3] PCP stands for Phencyclidine.

Defendant testified that he found a condom in the residents' bathroom of the rooming house on September 1—two days before the day of these events—and was "confused" because "nobody else in the house used condoms." Id. at 12-13.

Defendant testified he was suspicious of Hodge because she was unfaithful to him, and he was also suspicious of Halley. Id. at 13. Defendant recalled being in his room with Hodge and Halley on the day of the incident. Ibid. Defendant denied stabbing Halley. Ibid.

Prior to trial, defendant's trial counsel filed a motion to be relieved as counsel on the basis defendant complained to the Office of the Public Defender about trial counsel's representation. The motion was denied because of the approaching trial date.

Following a jury trial in 2017, defendant was found guilty of aggravated assault of Halley (count one); not guilty of robbery but guilty of the lesser-included offense of theft as to Halley (count two); and guilty of criminal restraint of Halley (count three), terroristic threats to Halley (count four), unlawful possession of a weapon (count five), and possession of a weapon for an unlawful purpose (count six). Id. at 14. Defendant was acquitted on terroristic threats to Hodge (count seven); and criminal restraint of Hodge (count eight). Ibid.

Defendant was sentenced to an aggregate term of ten years' imprisonment, subject to an eighty-five percent period of parole ineligibility pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. Id. at 2. We affirmed defendant's convictions on counts one, two, four, five, and six; and the sentences imposed on counts one, two, and four. Id. at 29. However, we remanded the matter to the trial court for entry of an amended judgment of conviction, merging counts five and six with count one. Ibid.

In February 2022, defendant filed a timely petition for PCR claiming ineffective assistance of trial and appellate counsel. Specifically, defendant claimed his trial counsel failed to retain an expert to support his voluntary intoxication defense; failed to communicate with him before trial; neglected to submit or request voir dire questions for the potential jurors about their ability to be fair and impartial given his repeated use of illicit drugs; and failed to properly advise him that he could plead guilty and preserve the right to appeal the denial of his Wade and other motions. Defendant also claimed his appellate counsel was ineffective for not raising these issues on direct appeal. Defendant asserted the cumulative effect of these errors rendered his trial "unfair."

Following oral argument, the judge denied the petition. In his written opinion, the judge noted that trial counsel's failure to retain an expert to support

a voluntary intoxication defense "was not deficient in light of the fact that [defendant] was deemed not credible." The judge considered defendant's argument that he allegedly "blacked out" at the time of the incident and found defendant was not credible. Instead, the judge found defendant "ha[d] an excellent memory as to what happened before the alleged events," but conveniently had no memory of events that occurred thereafter. Thus, the judge observed that any proposed expert "opining on the basis of [defendant's] uncredible testimony and rendition of facts would also lack credibility."

The judge also considered a substance abuse evaluation authored by Alexander Franchino, Psy.D., in 2022, submitted by defendant's PCR counsel. The judge rejected defendant's contention that had the jury considered his testimony in conjunction with expert testimony from Dr. Franchino, defendant would have been entitled to a voluntary intoxication charge.

The judge noted that Dr. Franchino opined it "was possible to deduce that both a chronic and poly user of such significant amounts [. . .] could indeed experience extended periods of full memory losses[.]" (emphasis added). In his opinion, the judge emphasized "[a]t best, Dr. Franchino's conclusion is equivocal and speculative" because defendant's testimony was found not credible at trial, and by the appellate court, as to the specific amount of drugs

he consumed. Therefore, the judge concluded Dr. Franchino's analysis "is of little weight," and consequently "it would not be unreasonable for trial counsel to forego retaining and proffering an expert on this issue."

In addition, the judge found defendant did not demonstrate any prejudice because he "made no showing of how an expert would have affected the outcome of the case" in light of the jury charge on voluntary intoxication being rejected by the trial judge and this court. The judge emphasized that the fact defendant "claimed to be heavily intoxicated" does not warrant the jury instruction on voluntary intoxication. The judge added "an expert's opinion would have very little [weight] and would not have moved the needle sufficiently to warrant the jury instruction."

The judge also determined that defendant failed to establish a prima facie case that his trial counsel was ineffective because he did not advise defendant he could plead guilty and preserve issues for appeal. The judge rejected defendant's argument that he did not accept the State's plea offer of four years' imprisonment subject to NERA "because he wanted to appeal" the Wade decision and the decision to admit his statements to the police.

The judge reasoned that defendant "maintained his innocence" and never indicated he would not accept the plea offer "due to information concerning the

appealability of certain motion decisions." On the contrary, the judge highlighted that defendant was "unhappy" with trial counsel's advice to accept the plea offer, "which would result in him admitting guilt." The judge found defendant's claim was a "bald assertion." The judge noted the "disparity" between the plea offer and the sentence but stated the result "is not the fault of trial counsel's conduct. Instead, the prejudice was self-inflicted." The judge also found that appellate counsel's decision to "forego certain issues on appeal" was not "deficient or prejudicial," and there was no cumulative error. A memorializing order was entered. This appeal followed.

Defendant raises the following sole contention for our consideration:

> THE TRIAL PCR COURT ERRED IN REFUSING TO GRANT AN EVIDENTIARY HEARING, IN THAT [DEFENDANT] PRESENTED A PRIMA FACIE CASE THAT HIS TRIAL ATTORNEY WAS INEFFECTIVE IN FAILING TO ENGAGE AN EXPERT WITNESS ON INTOXICATION.

II.

Because we affirm for the reasons expressed by Judge Militello in his thorough written opinion, we need not re-address defendant's arguments at length. We add the following comments. Both the Sixth Amendment of the United States Constitution and Article 1, Paragraph 10 of the State Constitution guarantee the right to effective assistance of counsel at all stages of criminal

12

proceedings. Strickland v. Washington, 466 U.S. 668, 686 (1984). In order to demonstrate ineffectiveness of counsel, "[f]irst, the defendant must show that counsel's performance was deficient. . . . [s]econd, the defendant must show that the deficient performance prejudiced the defense." Id. at 687. In State v. Fritz, 105 N.J. 42, 58 (1987), our Supreme Court adopted the two-part test articulated in Strickland.

To meet the first prong of the Strickland test, a defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." 466 U.S. at 687. Reviewing courts indulge in a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. The fact that a trial strategy fails to obtain the optimal outcome for a defendant is insufficient to show that counsel was ineffective. State v. DiFrisco, 174 N.J. 195, 220 (2002) (citing State v. Bey, 161 N.J. 233, 251 (1999)).

The second prong of the Strickland test requires the defendant to show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. Put differently, counsel's errors must create a "reasonable probability" that the outcome of the proceedings would have been different if counsel had not made the errors. Id.

at 694. The second <u>Strickland</u> prong is particularly demanding: "the error committed must be so serious as to undermine the court's confidence in the jury's verdict or the result reached." <u>State v. Allegro</u>, 193 N.J. 352, 367 (2008) (quoting <u>State v. Castagna</u>, 187 N.J. 293, 315 (2006)).

Short of obtaining immediate relief, a defendant may prove that an evidentiary hearing is warranted to develop the factual record in connection with an ineffective assistance claim. <u>State v. Preciose</u>, 129 N.J. 451, 462-63 (1992). A defendant is entitled to an evidentiary hearing only when (1) he or she is able to prove a prima facie case of ineffective assistance of counsel, (2) there are material issues of disputed fact that must be resolved with evidence outside of the record, and (3) the hearing is necessary to resolve the claims for relief. <u>R.</u> 3:22-10(b).

A defendant "must do more than make bald assertions that he [or she] was denied the effective assistance of counsel" to establish a prima facie case entitling him or her to an evidentiary hearing. <u>State v. Cummings</u>, 321 N.J. Super. 154, 170 (App. Div. 1999). To meet the burden of proving a prima facie case, a defendant must show a reasonable likelihood of success under both prongs of the <u>Strickland</u> test. <u>Preciose</u>, 129 N.J. at 463. We "view the facts in the light most favorable to a defendant to determine whether a defendant has

14

established a prima facie claim." Ibid. Applying these legal principles to the case before us, we agree with Judge Militello that defendant failed to establish a basis for an evidentiary hearing.

On appeal, defendant contends "the record was replete with references to his history of heavy drug usage, and more specifically, to his drinking and drugging on the morning in question," and yet his trial counsel did not retain a drug and alcohol abuse expert. Defendant asserts trial counsel was ineffective and obligated to investigate a voluntary intoxication defense because he was "too inebriated at the time to form an intent to commit the offenses and/or to remember what had occurred." We disagree.

Judge Militello properly analyzed defendant's contention that trial counsel was ineffective for failing to investigate and pursue a voluntary intoxication defense. Voluntary "intoxication of the actor is not a defense unless it negates an element of the offense." N.J.S.A. 2C:2-8(a). As our Supreme Court has noted, "N.J.S.A. 2C:2-8(a) permits evidence of intoxication as a defense to crimes requiring either 'purposeful' or 'knowing' mental states, but it excludes evidence of intoxication as a defense to crimes requiring mental states of only recklessness or negligence." State v. Cameron, 104 N.J. 42, 52 (1986).

To qualify as a defense negating an element of the offense, "the intoxication must be of an extremely high level." Id. at 54. "What is required is a showing of such a great prostration of the faculties that the requisite mental state was totally lacking." Ibid. (quoting State v. Stasio, 78 N.J. 467, 495 (1979) (Pashman, J., concurring)). A trial court may consider several factors in making its determination of whether a defendant was so intoxicated that there was a "prostration of faculties" that he or she was incapable of forming an intent to commit the crime. The factors include:

> the quantity of intoxicant consumed, the period of time involved, the actor's conduct as perceived by others (what he said, how he said it, how he appeared, how he acted, how his coordination or lack thereof manifested itself), any odor of alcohol or other intoxicating substance, the results of any tests to determine blood-alcohol content, and the actor's ability to recall significant events.
>
> [Cameron, 104 N.J. at 56.]

Here, the judge specifically found defendant's testimony that he "blacked out" was not credible because: (1) "the quantity of the intoxicants and his tolerance to such intoxicants is unknown"; (2) defendant was able to search Halley's cell phones "for a significant period of time"; and (3) defendant's "assertion that he was unable to recall significant events was deemed not credible." Based on the evidence adduced at trial, the judge found an expert

16

opinion "would have very little [weight]" to justify a defense of voluntary intoxication, let alone a jury instruction on voluntary intoxication. Moreover, the record does not reveal that any tests were done on the day of the incident to establish the presence of intoxicants in defendant's system.

We agree that defendant has failed to establish either prong of the Strickland/Fritz test. Applying these principles, we discern no abuse of discretion in Judge Militello's decision denying defendant's PCR petition without an evidentiary hearing. The judge thoroughly and accurately addressed defendant's contentions, and the arguments are without sufficient merit to warrant further discussion here. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2540-22